## NORRIS *v.* WOLFENSBERGER

[No. 106, September Term, 1967.]

*Decided February 7, 1968.*

The cause was argued before HAMMOND, C. J., HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Edwin H. Miller,* with whom were *Miller, Miller & Kuczynski* on the brief, for appellant.

*Kenneth J. Mackley,* with whom was *Irving M. Einbinder* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The appeal in this case stems from a collision that occurred when the driver of one automobile attempted to make a left turn at an intersection of city streets where traffic was restricted to one direction and the driver of another automobile attempted to pass to the left instead of to the right of the turning automobile with intent to cross to the other side of the intersection. The appellant-defendant is John K. Norris (the passing motorist). The appellee-plaintiff is Georgia B. Wolfensberger (the turning motorist).

The motorists were driving their respective automobiles from west to east on Washington Avenue (U. S. Route 40) in Hagerstown as they approached Nottingham Road. The avenue is a one-way street with two lanes to the west of the intersection and three to the east of it. Less than a hundred feet from the intersection the northerly side of the paved avenue gradually spreads out to form a traffic-guiding flange which when it reaches the intersecting road is directly across the intersection from the northerly curb lane on the other side. A center line divides the two lanes on the westerly portion of the avenue and two center lines divide the three lanes on the easterly portion but there are no markings dividing the elongated triangular-shaped flange from the lane next to it. The entire width of the east and west portions of the avenue at the intersection is approximately the same.

On the day of the accident the turning motorist was traveling east in the left lane of the two lane portion of Washington Avenue. As she approached the intersection and was turning toward Nottingham Road she collided with the automobile of the passing motorist as the driver thereof tried to pass on her left in the widened portion of the avenue in order to cross the intersection. The impact occurred approximately thirty feet from the intersection. The damage to the sides of the automobiles was not extensive.

According to the turning motorist she switched on her left-turn signal approximately six hundred feet from the intersection; she observed that two automobiles were about two hundred feet behind her; she was driving in the left or fast lane and was bearing toward the left at around twenty miles per hour; she observed the following automobiles again approximately one hundred and fifty feet behind her when she was some four hundred feet from the intersection; and she was struck on the left side of her automobile as she was making her turn.

According to the passing motorist the turning motorist was closer to the center line of the avenue than to the left of the fast lane when he tried to pass her intending to cross the intersection into the curb lane of the avenue on the other side of the intersection; he never saw a left-hand turn signal; when the two automobiles were practically side by side he saw that the

other motorist was going to do something other than proceed straight ahead; and she kept coming toward him until they collided.

The trial court directed a verdict for the turning motorist against the passing motorist on the issue of primary negligence apparently on the theory that, as there were only two lanes at the point where the accident occurred, the passing motorist was guilty of negligence as a matter of law in attempting to pass in the lane occupied by the turning motorist. The court reserved its decision as to the direction of a verdict against the turning motorist and submitted the issue of whether she was "guilty of any negligence which was the proximate contributing cause to the happening of [the] accident," to the jury.[1] The answer of the jury was "yes" and therefore no damages were awarded. On the motion of the turning motorist for a judgment *n.o.v.* and a new trial, the court granted the motion for judgment and ordered a new trial as to damages. Conceding that he "was guilty of negligence contributing to the happening of the accident," no appeal was taken by the passing motorist from the judgment entered on the directed verdict. The only question on appeal therefore is whether the trial court erred in granting the motion for judgment *n.o.v.* and a new trial as to the damages sustained by the turning motorist. We think the court erred.

One of the rules of the road applicable to this case is subsection (e) of § 225 of Article 66½ of the Code (1967 Replacement Volume), providing—

> "At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection *shall approach the intersection in the extreme left-hand lane lawfully available* to traffic moving in the direction of travel of such vehicle; and after entering the intersection the left turn shall be made so as to leave the intersection, as nearly as practicable, in the left-hand lane lawfully available to traffic moving in such

---

1. The instructions of the trial court to the jury were not included in the record extract because they were not considered to be material to the question on appeal.

direction upon the roadway being entered." (Emphasis added.)

The rule raises a question as to whether the turning motorist was in the extreme left-hand lane. Whatever constitutes a "left-hand lane," [2] it would certainly include any well-defined improved extension of the normal width of a roadway, regardless of surface markings, which is capable of conducting traffic. This conclusion is supported by comparing subsections (a) and (b) of § 225 concerning turns generally. Subsection (a) states that "[b]oth the approach for a right turn and a right turn shall be made *as close as practical to the right-hand curb or edge of the roadway."* (Emphasis added.) Subsection (b) states in part that an "[a]pproach for a left turn shall be made in that portion of the right half of the roadway *nearest the center line thereof."* (Emphasis added.) These subsections make it clear that on a two-way highway a motorist should approach and make a turn as near to the edge or center line of the right half of the roadway as he may lawfully drive depending on whether he intends to turn right or left. Obviously a *right turn* from a one-way highway is the same as one from a two-way highway. A left turn from a one-way highway is different from one off a two-way highway in that there is no on-coming traffic to compete with, but other than the direction, it is not unlike a right turn. Certainly, there is no reason why subsection (e) should not be interpreted consistently with subsections (a) and (b) to mean as close to the left-hand curb or edge of the roadway as practical. The conclusion becomes even clearer when the purpose of subsections (a), (b) and (e) is considered as one function: for then it is apparent that the rule is as relevant to traffic restricted to one direction as it is to traffic permitted in two directions. The requirement that turning motorists drive close to the edges or center of a roadway, like the giving of manual or hand signals, is to further indicate to following motorists an intention to turn right or left as the case may be and that turning motorists should not be passed on the side toward

---

2. Turning lanes are also referred to as deceleration lanes or storage lanes.

which an indication of turning has been given. See *May v. War-nick,* 227 Md. 77, 175 A. 2d 413 (1961).

As the turning motorist in this case was not in the extreme left-hand lane within the meaning of § 225(e), the trial court should not have ruled as a matter of law that she was free of negligence.[3] On the other hand that does not mean that the court should have granted a directed verdict against the turning motorist for having been contributorily negligent. It is clear that the passing motorist was one of the category of persons whom the statute was intended to protect and that the accident was of the nature of those the statute is intended to prevent. Nevertheless the happening of the accident did not, since the violation of a rule of the road is not negligence *per se,* compel a finding of an irrebuttable presumption of negligence or even negligence, *Kelly v. Huber Baking Company,*[4] 145 Md. 321, 125 Atl. 782 (1924), though it may, if the violation was the proximate cause of the accident, create a *prima facie* case of negligence and put the burden on the other party of showing that he was justified in violating the rule. *Miller v. Mullenix,* 227 Md. 229, 176 A. 2d 203 (1961). And see *Liberto v. Hol-*

---

3. In some cases it may be a jury question as to whether a motorist was in the *extreme* left-hand lane just as it is often a jury question as to whether a motorist kept as *close as practical* to the curb or edge of the roadway. See Feinglos v. Weiner, 181 Md. 38; Mauchle v. Panama-Pacific International Exposition Co., 174 Pac. 400 (Cal.); McGregor v. Weinstein, 225 Pac. 615 (Mont.); Wines v. Goodyear Tire and Rubber Co., 246 S. W. 2d 525 (Mo.).

4. In Kelly v. Huber Baking Co., 145 Md. 321, the Court (quoting a part of Chapter 297 of Huddy on Automobiles) said at p. 335 that "[t]he distinction between mere 'evidence of negligence' and 'negligence *per se*' is very marked, in that in the former there must be an adjudication as to whether or not the violation constitutes negligence, whereas in the latter negligence necessarily follows the proof of the violation * * *. The rule is different in some jurisdictions where the regulation involved relates to the so-called 'law of the road'. Driving on the wrong side of the road is not so clearly a wrongful act as driving at a prohibited speed, for the circumstances may be such as to excuse a violation of the law of the road. Hence the violation is generally said to be *prima facie* negligence, and the violator of the rule is given an opportunity to rebut the inference of negligence arising against him."

*feldt,* 221 Md. 62, 65, 155 A. 2d 698, 700 (1959). Ordinarily therefore the questions of negligence and proximate cause would be for the jury to decide.

We think it is clear that the turning motorist violated § 225-(e) and since there was no evidence tending to excuse her from not being in the extreme left-hand lane, she was contributorily negligent. There was, however, still a question as to whether her negligence was a proximate cause of the accident or whether the chain of causation had been broken which is normally a jury question. As to this the jury evidently found that there was unbroken proximate causation and its verdict therefore should be reinstated.

All pertinent precautionary measures required by law are usually jury questions and a verdict should be directed only where reasonable minds could not differ. *Kline v. Kane,* 246 Md. 19, 226 A. 2d 894 (1967) ; *Clark v. Junkins,* 245 Md. 104, 225 A. 2d 275 (1967) ; *Cobourn v. Morrison,* 227 Md. 96, 175 A. 2d 589 (1961) ; *Kelly v. Huber Baking Co., supra* (at p. 337 of 145 Md.).

Since there was a conflict in the testimony as to whether or not the turning motorist signaled her intention to turn left, the jury could also have found that she was contributorily negligent in failing to comply with § 228(a) requiring that no turn shall be made "from a direct course until such movement can be made with reasonable safety and then giving an appropriate signal in the [prescribed] manner * * * in the event any other vehicle may be affected by such movement."

Likewise the jury, quite apart from § 225(e), may have found that the turning motorist, in attempting to make a left-hand turn in front of the automobile she knew was behind her without looking again, failed to act with reasonable care for the safety of herself and others. See *Suman v. Hoffman,* 221 Md. 302, 157 A. 2d 276 (1960) ; 2 Blashfield, *Automobile Law and Practice,* § 112.23.

> *Order for judgment n.o.v. and new trial as to damages reversed; verdict of jury for defendant reinstated; costs in the trial court and in this Court to be paid by the plaintiff-appellee.*