ALBERT ALEXANDER RAMSAY *v.* BONNIE LEE PETERS ET AL.

[No. 103, September Term, 1973.]

*Decided February 13, 1974.*

The cause was argued before MORTON, POWERS and DAVIDSON, JJ.

*C. MacNair Speed,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellant.

*Henry L. Conway, Jr.,* for appellees.

POWERS, J., delivered the opinion of the Court.

Bonnie Lee Peters filed suit against Albert Alexander Ramsay in the Circuit Court for Anne Arundel County for damages she sustained when their two automobiles collided in the intersection of Ritchie Highway and Hahn Drive, in Anne Arundel County, on 12 May 1971. Thereafter, Mr. Ramsay sued Miss Peters for his damages resulting from the same collision. The two cases were consolidated by order of the court, and were tried as one. Motions for directed verdicts were either denied or reserved, and the cases were submitted to the jury.

The jury found that Mr. Ramsay was negligent and that Miss Peters was free of negligence, and assessed her damages at $7,000. The trial judge denied Mr. Ramsay's motion for judgment n.o.v., and entered judgments against him in favor of Miss Peters in both cases. Aggrieved by the judgments, Mr. Ramsay asks reversal in this Court on appeal. We conclude that Mr. Ramsay is justly aggrieved by the award of damages against him, and we shall reverse that judgment, but shall affirm the judgment denying him recovery as a plaintiff.

No significant conflict was presented by the evidence. What the two drivers did, and where they were when they did it, was undisputed. The question is whether the conduct of each driver measured up to the standard of care that each was under a duty to exercise under the circumstances. We are persuaded that the evidence showed that Miss Peters was negligent as a matter of law, and that whether Mr. Ramsay was negligent was a proper question for the jury.

A description of the general area and of the immediate location where the collision occurred is best taken from a plat, received in evidence as a joint exhibit. Ritchie Highway runs generally north and south. It is a divided road, with two lanes, of a combined width of approximately 24 feet, provided for through travel in each direction. The northbound lanes are separated from the southbound lanes by a grass median strip, which is slightly over 40 feet wide, except where it is narrowed to provide for a left turn lane approaching the intersection of Hahn Drive. The two lanes

for through travel northbound are separated from each other by an interrupted white line.

A left turn lane for northbound traffic approaching Hahn Drive begins about 180 feet south of the intersection, and from that point is separated from the westerly northbound lane by a continuous white line. Although a conventional left turn is not possible, a northbound motorist may turn left to make a U-turn, or to enter private commercial property on the west side of Ritchie Highway. An area to the east of the two northbound lanes is separated from them by a continuous white line which exists for at least several hundred feet south of Hahn Drive, and which continues to the north. For some 200 feet south from Hahn Drive this area is 15 feet wide and is paved uniformly with the rest of the highway pavement, to the curb line of the adjacent property. This area continues north of Hahn Drive, narrowed to 12½ feet for some 110 feet, then widening to 15½ feet, to the intersection of Old Annapolis Road, Route 648, some 650 feet north of Hahn Drive.

The south curb of Hahn Drive continues in an arc to form the east curb of Ritchie Highway, south for about 200 feet, but broken by two 35 foot driveways into the parking lot of a professional building at the southeast corner. About 150 feet north of Hahn Drive is a driveway into what appears to be an unimproved lot, and about 80 feet farther north is the first of two driveways into a Sunoco Service Station.

Hahn Drive intersects Ritchie Highway at a right angle, on the east side only. A median break aligned with Hahn Drive extends the intersection to the southbound lanes of Ritchie Highway. A left turn lane is provided for southbound traffic approaching Hahn Drive. There is no traffic control light at the intersection.

Another exhibit received in evidence showed that the paving east of the two northbound lanes and south of Hahn Drive for a distance of 208 feet had been privately constructed a few years earlier, under a permit from and under specifications prescribed by the State Roads Commission, in connection with the driveway entrances to the adjacent private property.

At about 3:45 in the afternoon of 12 May 1971 Miss Peters was driving north on Ritchie Highway. Her destination was the Sunoco Station about 230 feet north of Hahn Drive. Near the professional building south of Hahn Drive, at the point where the third or right hand lane begins, she pulled over into that lane, because the traffic light at Route 648 caused heavy traffic to be backed up to that point in the through lanes of the northbound roadway. She said that the lane she pulled into was ordinarily used to make a right turn, and that she intended to make a right turn into the Sunoco Station. She proceeded in that lane to go straight through the Hahn Drive intersection. Her car was struck on the left side by Mr. Ramsay's car when she was "more or less in the middle or towards the far end of Hahn Drive."

Trooper Douglas Pahl, who investigated the accident, said that Ritchie Highway had two northbound lanes, an improved shoulder, and a left turn lane. He said that the lane which he called an improved shoulder was used by the public in general for right turns. He found the debris from the collision in what he referred to as the improved shoulder, at about the center line of Hahn Drive. The trooper said that Mr. Ramsay told him that he was coming from the crossover [1] where he had stopped waiting for traffic to clear; that the traffic had backed up from the red light, but the vehicles in the two northbound lanes had stopped and left room for vehicles to cross the northbound lane; and that they had indicated to him by a wave of the hand that they were going to stay there and that he could proceed across. The briefs of both parties say that Mr. Ramsay had been traveling south on Ritchie Highway, and was making a left turn into Hahn Drive. Although there was no evidence that Mr. Ramsay was making a left turn, it is a permissible inference, and we take it to be a fact.

---

1. He apparently referred to that part of the intersection between the northbound and southbound roadways of Ritchie Highway. This area is not a crossover, as defined by statute. Code, Art. 66 1/2, § 1-116 says:

"Crossover means a transverse roadway or opening which connects the separate roadways of a divided highway at a point other than an intersection of said divided highway with another highway."

A number of statutory definitions and rules of the road contained in the vehicle laws, Code, Art. 66 1/2, are pertinent to our consideration of the case. They are:

§1-132.

"Highway means the entire width between the boundary lines of every way or thoroughfare of any kind used by the public for purposes of vehicular travel, whether actually dedicated to the public and accepted by the proper authorities or otherwise."

§1-177.

"Roadway means that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder. If a highway includes two or more separate roadways the term 'roadway' as used herein refers to any such roadway separately but not to all such roadways collectively."

§1-175.

"Right-of-way means the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian."

§11-304 (b).

"The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting this movement in safety. In no event shall this movement be made by driving off the pavement or main traveled portion of the roadway."

§11-402 (a).

"The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

§11-601 (a) (1).

"Right Turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway."

Appellant correctly argues that the interpretation of a statute is a function of the court, not the jury. *Vogelsang v. Sehlhorst*, 194 Md. 413, 419, 71 A. 2d 295 (1950). We are mindful also of the oft-stated rule which the Court of Appeals recently expressed in *Reiser v. Abramson*, 264 Md. 372, 286 A. 2d 91 (1972) as follows, at 377-378:

"The question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence. Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury. In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such character as to leave no room for difference of opinion thereon by reasonable minds."

It is the position of the appellant that when the applicable vehicle laws are applied to the facts, undisputed in this case, there is only one conclusion: that Miss Peters was using the shoulder to pass other vehicles on the right, and was negligent as a matter of law. The appellee's position is summarized by this statement in her brief: "Whether the Appellee at the time of the accident was driving upon an improved shoulder or a right-hand turn lane was the disputed fact in this case requiring the services of a Jury."

Neither contention focuses precisely on the critical point in this case. There is no dispute as to where Miss Peters was driving. Whether it was a shoulder or something else is not a dispute of fact, but a question of law. The word "roadway",

as defined in the statute, includes at least the two through lanes for northbound traffic on Ritchie Highway, both north of and south of as well as crossing the Hahn Drive intersection. By definition roadway excludes a berm or shoulder, but neither word is otherwise defined.

It is from the physical characteristics of the area in question, and the use ordinarily made of it, in the absence of governing traffic control devices or markers, that its lawful use is to be determined. To make that determination, the court looks to the area's adjacency to the curb and to the main traveled portion of the roadway; to the nature of its surface compared with the adjacent surface; and to the uses ordinarily made of it by the public generally.

At the point where Miss Peters entered it, the lane in question adjoined the curb to the right and the main traveled portion of the roadway to the left; its surface was continuous with and physically indistinguishable from the other pavement, except for an unbroken white line painted on the surface; and it was ordinarily used by the public in general for right turns.

In *Norris v. Wolfensberger*, 248 Md. 635, 237 A. 2d 757 (1968) the Court of Appeals considered whether a motorist intending to turn left obeyed the rule requiring that she approach the intersection in the extreme left-hand lane lawfully available to traffic, as then prescribed by Art. 66 1/2, § 225 (e).. It observed that other than the direction, a left turn is not unlike a right turn. The Court said, at 639:

> "The rule raises a question as to whether the turning motorist was in the extreme left-hand lane. Whatever constitutes a 'left-hand lane,'[2] it would certainly include any well-defined improved extension of the normal width of a roadway, regardless of surface markings, which is capable of conducting traffic."

Footnote 2 in the opinion reads: "2. Turning lanes are also referred to as deceleration lanes or storage lanes."

Clearly the lane which Miss Peters entered was a well-defined improved extension of the normal width of the

roadway, which not only was in fact used but was lawfully used by the general public as a right turn lane. Neither the fact that the lane had been privately constructed on public property nor that it was separated from the main traveled portion of the roadway by a solid white line [2] made it any the less a lawful right turn lane.

Up to the intersection with Hahn Drive, both the right turn lane and the left turn lane were extensions of the normal width of the roadway, not only capable of but in fact designed and provided for the very purpose of conducting a special kind of traffic. At no time however, was either turn lane a part of the main traveled portion of the roadway. The word "main", as used in Art. $66\frac{1}{2}$, § 11-304 (b), must be given meaning, and we conclude that it was used to distinguish the through lanes constituting the normal width of a roadway from a roadway enlarged where necessary by additional lanes for turns or other special purposes. When the right turn lane on which Miss Peters was driving reached the intersection of Hahn Drive, it ceased to be a turn lane. Her intention to make a right turn at some more distant point did not entitle her to use it as a through lane across Hahn Drive. In using the lane for traversing the intersection she was passing other vehicles on the right by driving off the main traveled portion of the roadway. Doing so was unlawful and a proximate cause of the collision, and in the circumstances, was negligence as a matter of law. Mr. Ramsay's motion for a directed verdict in the suit against him should have been granted.

---

**2.** Appellant contends in his brief that a Manual on Uniform Traffic Control Devices, which Art. $66\frac{1}{2}$, §15-104 requires the State Roads Commission to adopt, sets forth the purpose of the solid white line as delineating the edge of the road. The manual was mentioned during a colloquy out of the presence of the jury, but it was not offered in evidence, nor was the court asked to take judicial notice of it. *See Belle Isle Cab Co. v. Trammell*, 227 Md. 438, 446, 177 A. 2d 404 (1962). The manual was used in argument on motions for judgment n.o.v. and for a new trial, and it appears that the trial judge was at that time furnished a copy. In his memorandum denying the motions the judge pointed out that the manual was not before the court, but even so, it said that a solid white line is used to delineate the edge of a travel path; as a pavement edge marking; as a lane line approaching an intersection; to delineate left or right turn lanes; and for other purposes. It appears to be used as a guide, rather than as a governing traffic control marker.

As it governed his right to recover as a plaintiff, we have said that the question of whether Mr. Ramsay was negligent was properly submitted to the jury. In making a left turn, he was required by § 11-402 (a) to yield the right of way to any vehicle approaching from the opposite direction which was within the intersection or so close thereto as to constitute an immediate hazard. Since right of way is accorded to one proceeding in a lawful manner, § 1-175, it may be that neither driver had a right superior to the other.

Even one who has a statutory right of way is not relieved from the duty of using reasonable care to avoid a collision. He must proceed at a lawful rate of speed, keep his car under control, and be careful to avoid injury to others, *Ghiradello v. Malina*, 238 Md. 498, 505-507, 209 A. 2d 564 (1965). Cases relied upon by Mr. Ramsay, to support the argument that he was not negligent, including *Legum v. Hough*, 192 Md. 1, 63 A. 2d 316 (1949) go no further than to say that his negligence was for the jury. The judgment denying recovery to Mr. Ramsay as a plaintiff, based on the jury's finding that he was negligent, will be affirmed.

> *In Law No. C-5069 judgment for Bonnie Lee Peters reversed and judgment entered for Albert Alexander Ramsay for costs in the lower court.*
>
> *In Law No. C-6012 judgment affirmed.*
>
> *Costs in this Court to be paid one-half by each party.*