# PETERS *v.* RAMSAY

[No. 40, September Term, 1974.]

*Decided November 7, 1974.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Henry L. Conway, Jr.,* for appellant.

*C. MacNair Speed,* with whom were *Lord, Whip, Coughlan & Green, P.A.* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This is a personal injury case arising out of a collision on May 12, 1971, between two automobiles being operated by the parties at the intersection of Ritchie Highway and Hahn Drive in Anne Arundel County. As a result of injuries suffered by appellant, she brought suit against appellee in the Circuit Court for Anne Arundel County. There, the case was tried before a jury which, having found upon special issues that appellee was guilty of negligence proximately causing the collision, and that appellant was free of contributory negligence, rendered a verdict in favor of the latter in the sum of $7,000.[1] Subsequently, the trial judge (Beardmore, J.) denied a motion for judgment n.o.v. and a new trial. On appeal to the Court of Special Appeals, the judgment in favor of appellant was reversed upon the ground that she was guilty of contributory negligence as a matter of law, *Ramsay v. Peters,* 20 Md. App. 61, 314 A. 2d 722 (1974). In light of the unusual physical circumstances which prevailed, novel questions arise under the motor vehicle code; hence, we granted certiorari.

The collision occurred while appellant was proceeding in a northerly direction on Ritchie Highway. Appellee, who had been southbound, was making a left turn to proceed easterly on Hahn Drive which intersects Ritchie Highway at a right angle on the east side only. The cars collided at a point established by a state trooper, who investigated the accident, as being in what we shall identify for convenience as the right of three northbound lanes in Ritchie Highway, approximately midway between an imaginary extension of the north and south sides of Hahn Drive.

---

1. Appellee also sued appellant for personal injuries resulting from the same collision; hence, the two cases were tried together pursuant to an order of consolidation. Having been found guilty of negligence by the jury, appellee was, of course, barred from recovery. Although he sought unsuccessfully in the Court of Special Appeals to challenge the submission of his negligence *vel non* to the jury, he does not raise that question in this Court.

Ritchie Highway is a divided highway with a grass median strip separating the northbound and southbound lanes. The center and left northbound lanes are separated from each other by an interrupted white line. There are also left turn lanes at the Hahn Drive intersection for both northbound and southbound traffic on Ritchie Highway. Between intersections, the right lane is separated from the center lane by a solid white line. At the time of this accident, the right lane on Ritchie Highway began at the entrance to a medical center located in the southeast quadrant of the Hahn Drive intersection and extended northward to the intersection at State Route 648, an overall distance of some 800 feet. All three northbound lanes were similar to each other in width, composition and appearance. Apparently, Ritchie Highway initially had been constructed as a predominantly four-lane divided highway, and remained that way for much of its length, although not in this vicinity, on the day of the accident. Except to the extent that the solid white line separating the right lane from the center lane can be so regarded, there were no signs or devices restricting the use of the right lane. There were curbs in some parts of the east side of Ritchie Highway, just above and below Hahn Drive.

As appellant was proceeding in a northerly direction on Ritchie Highway, she reached the entrance to the medical center, the point at which the northbound segment of Ritchie Highway widened from two to three lanes. There, she observed that traffic in both the left lane and what had become the center lane was backed up to that point from Route 648. Since the righthand lane was virtually unoccupied, she moved into it prior to reaching Hahn Drive, not for the purpose of turning right at that intersection, but with the intention of entering a service station approximately 230 feet north of Hahn Drive.

According to appellant, the right lane, which abutted an assortment of commercial establishments in that area, was ordinarily used by traffic to make a right turn. The trooper confirmed that it was "used by the public in general for right turns." Appellant explained that, based on her prior

experience in that vicinity, it was necessary to enter the right lane in advance if one was preparing to make a righthand turn, because to do so directly from the center lane would subject that person to the danger of being struck by other vehicles which might already have occupied the right lane.

As appellee reached the intersection, proceeding in a southerly direction, he stopped to make his left turn. At that point, the northbound traffic, which was backed up, had allowed sufficient room for vehicles wishing to turn easterly into Hahn Drive. The lead driver in the center or left northbound lane motioned to appellee as if to wave him on. Upon entering the right lane, he struck appellant's car on its left side, while, as we have indicated, it was approximately midway through the intersection.

In essence, the primary contention of appellee at every stage of these proceedings has been that appellant is barred from recovery as a matter of law because her automobile was positioned at a point where it should not have been under the circumstances which then obtained. Indeed, even here he clings to the notion, which he advanced at the prior levels, that appellant was actually on an "improved" berm or shoulder. Appellant, of course, has consistently maintained that she was properly in the right lane, and that the failure of appellee to yield the right of way was the sole proximate cause of the collision. The focal point for these conflicting claims — as submitted to the jury and at both appellate levels — has been the following provisions of the motor vehicle laws, Md. Code (1957, 1970 Repl. Vol.) Art. 66$\frac{1}{2}$:

§ 1-132:

"Highway means the entire width between the boundary lines of every way or thoroughfare of any kind used by the public for purposes of vehicular travel, whether actually dedicated to the public and accepted by the proper authorities or otherwise."

§ 1-177:

"Roadway means that portion of a highway

improved, designed or *ordinarily used* for vehicular travel, *exclusive of the berm or shoulder.* If a highway includes two or more separate roadways the term 'roadway' as used herein refers to any such roadway separately but not to all such roadways collectively." (emphasis added).

§ 11-304:

"(a) The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions, and in all cases subject to the requirements of subsection (b):

\* \* \*

"(b) The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting this movement in safety. In no event shall this movement be made by driving off the pavement or *main traveled portion* of the roadway." (emphasis added).

§ 11-402:

"(a) The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

The ultimate question upon which this case turns, as the Court of Special Appeals recognized, is whether appellant, at the point of impact, was on the "main traveled portion of the roadway" within the meaning of § 11-304 (b). In effect, judging by the tenor of its jury instructions and its decision in denying appellee a new trial and judgment n.o.v., the trial court concluded that this was a question for the jury. The Court of Special Appeals held, correctly, of course, that this called for an interpretation of a statute, which is a function of the court, not the jury. *Falcone v. Palmer Ford,* 242 Md. 487, 493-94, 219 A. 2d 808 (1966); *Aravanis v. Eisenberg,* 237

Md. 242, 259, 206 A. 2d 148 (1965); *Vogelsang v. Sehlhorst,* 194 Md. 413, 419, 71 A. 2d 295 (1950); *see Hunt v. Montgomery County,* 248 Md. 403, 415, 237 A. 2d 35 (1968).

Indeed, save for the conclusion, we are in agreement with virtually the entire opinion of the Court of Special Appeals. For example, we think it quite correctly observed:

> "*It is from the physical characteristics of the area in question, and the use ordinarily made of it, in the absence of governing traffic control devices or markers,* that its lawful use is to be determined. To make that determination, the court looks to the area's adjacency to the curb and to the main traveled portion of the roadway; to the nature of its surface compared with the adjacent surface; and to the uses ordinarily made of it by the public generally.

> "At the point where Miss Peters entered it, the lane in question adjoined the *curb* to the right and the main traveled portion of the roadway to the left; *its surface was continuous with and physically indistinguishable* from the other pavement, except for an unbroken white-line painted on the surface; *and it was ordinarily used by the public in general for right turns.*

> \* \* \*

> "Clearly the lane which Miss Peters entered was a well-defined improved extension of the normal width of the roadway, which not only was in fact used but was *lawfully used by the general public as a right turn lane.* Neither the fact that the lane had been privately constructed on public property nor that it was separated from the main traveled portion of the roadway by a solid white line made it any the less a lawful right turn lane.[2]

---

[2]. The evidence disclosed that the paving of the right lane south of Hahn Drive for a distance of some 200 feet — the area in front of the medical center — had been privately constructed a few years earlier under a permit from, and in accordance with specifications prescribed by, the State Roads Commission.

"Up to the intersection with Hahn Drive, both the right turn lane and the left turn lane were extensions of the normal width of the roadway, not only capable of but in fact designed and provided for the very purpose of conducting a special kind of traffic. . . ." 20 Md. App. at 68-69 (emphasis added).

We part company, however, on reaching the following statement:

". . . At no time however, was either turn lane a part of the main traveled portion of the roadway. The word 'main', as used in Art. 66½, § 11-304 (b), must be given meaning, and we conclude that it was used to distinguish the through lanes constituting the normal width of a roadway from a roadway enlarged where necessary by additional lanes for turns or other special purposes. When the right turn lane on which Miss Peters was driving reached the intersection of Hahn Drive, it ceased to be a turn lane. Her intention to make a right turn at some more distant point did not entitle her to use it as a through lane across Hahn Drive. In using the lane for traversing the intersection she was passing other vehicles on the right by driving off the main traveled portion of the roadway. . . ." 20 Md. App. at 69.

In effect, the Court of Special Appeals held that even though the right lane was physically indistinguishable from the other pavement in the highway, and was lawfully used by the general public as a right turn lane — a purpose for which it had been designed — it was nevertheless not part of "the main traveled portion of the roadway." The rationale for this conclusion, as we have noted, was:

". . . The word 'main', as used in Art. 66½, § 11-304 (b), must be given meaning, and we conclude that it was used to distinguish the through lanes constituting the normal width of a roadway from a roadway enlarged where necessary by additional

lanes for turns or other special purposes." 20 Md.
App. at 69.

With this, we cannot agree. We are of the view that the right lane here was, both in law and in fact, part of the "main traveled portion of the roadway" within the meaning of § 11-304 (b). What constitutes the "main traveled portion of the roadway" is incapable of precise definition, and likely will vary with the physical facts prevailing in a particular case. We think these words were generally intended to distinguish that portion of the roadway *actually and ordinarily used* by the traveling public, whether for through driving or making a right turn, from the remainder of the highway, including the shoulder or berm, *cf. Schulte v. Schultz*, 199 N.W.2d 39, 41 (S.D. 1972). The physical facts here must be viewed in light of that broad definition.

The evidence was uncontradicted in showing that other than the solid white line, which even appellee concedes is a guide marker rather than a governing control, there were no other signs or signals of any kind requiring motorists, once having entered the lane, to make the first right turn; or, indeed, to make any right turn at all. It was also undisputed that the lane was ordinarily or generally used by the public, if only for making right turns. It was similar in width and composition to the other lanes, and was equally capable of carrying traffic. *cf. Norris v. Wolfensberger*, 248 Md. 635, 639, 237 A. 2d 757 (1968). In some parts of Ritchie Highway near this intersection, the right lane is even bounded on the east by a curb. *See Zakrzewski v. Hyronimus*, 136 N.W.2d 572, 575 (S.D. 1965). Contrary to the argument advanced by appellee — tacitly rejected by the Court of Special Appeals — the right lane was not a berm or a shoulder. Webster's Third New International Dictionary (1971) defines a shoulder as "the part of a roadway *outside of the traveled way* on which vehicles may be parked in an emergency." (emphasis added). We do not suggest this is the only use, but clearly a shoulder is not part of the "traveled way."

From what we have said, our disagreement with the holding that the word "main" refers only to the "through"

lanes is apparent. Nor do we accept the notion that appellant, having entered the right lane below Hahn Drive, was compelled to make the first right turn at the risk of becoming an interloper if she continued through the intersection. The unsoundness of this argument becomes apparent when one notes the number of business establishments abutting the right lane with driveways in close proximity to each other. To require a motorist entering one of those driveways to make a right turn abruptly from the high-speed center lane without affording the opportunity for decelerating well in advance would, in our judgment, invite likely disaster.

In sum, at the point of impact, appellant was upon the "main traveled portion of the roadway" while operating her automobile in the right lane. Therefore, since she did not violate § 11-304 (b), she was not guilty of contributory negligence as a matter of law.

> *Judgment of the Court of Special Appeals reversed; appellee to pay costs.*