951 A.2d 105

**John GRADY, et ux,**

v.

**Darin Donell BROWN.**

**No. 0246 Sept.Term, 2007.**

Court of Special Appeals of Maryland.

June 30, 2008.

Irwin E. Weiss and Richard M. Bader, Baltimore, for Appellant.

Michael C. Michaud and Sara H. Deriu, Towson, for Appellee.

Panel: SALMON, and WILLIAM W. WENNER (Ret., Specially Assigned), and SALLY D. ADKINS,* JJ.

SALMON, Judge.

John Grady and his wife, Jacqueline Grady, brought a motor tort claim in the Circuit Court for Baltimore City against Darin Donell Brown (Brown). The parties agreed that the case would be tried before a jury on the issue of liability only and that, if Brown was found liable for the accident, a judgment in the amount of $50,000 would be entered against him.

At the conclusion of all the evidence, counsel representing the Gradys made a motion for judgment in their favor as to the issue of liability. The motion was denied. The jury, by its answers to a question set forth on a special verdict sheet, found that Mr. Brown was not negligent. Accordingly, the jury did not reach the second question presented to them, which was whether John Grady was contributorily negligent. The Gradys filed a motion for judgment notwithstanding the verdict and a motion for a new trial. Both motions were denied.

Mr. and Mrs. Grady then noted this appeal, in which they present one question for our review: did the trial court err when it denied appellant's motion for judgment?[1]

---

* Sally D. Adkins, now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

1. Technically, the Gradys raised two issues. In addition to the issue of whether the motion for judgment should have been granted, they also

**I**

## A. UNDISPUTED FACTS

The accident that gave rise to this case took place in Baltimore City at the intersection of Falkirk Road and an alley that intersects that road. Falkirk Road has two lanes- one for northbound traffic and one for southbound traffic. Parking is allowed on both the east and west sides of Falkirk Road.

The accident occurred at approximately 7 a.m. on March 16, 2005. John Grady ("Grady") was riding his motorcycle north- bound on Falkirk Road. He stopped at a stop sign at the intersection of Falkirk Road and Gittings Road. That stop sign is about 150 feet from the point where the accident occurred. As Grady proceeded north towards the accident scene, there were parked vehicles to his right, i.e., on the east side of Falkirk Road.

Shortly before the accident, Brown was driving his green Ford Escort station wagon westbound in the alley that inter- sects with Falkirk Road. As will be seen, there is a dispute as to what Brown did after he reached the intersection of the alley and Falkirk Road.

## B. TRIAL TESTIMONY OF GRADY

As Grady approached the alley, a Ford Pickup truck was parked about 3 feet to his (Grady's) right and slightly south of the entrance to the alley. That pickup truck was the nearest parked vehicle to the alley and it would have been to the

---

raised the issue as to whether the trial judge erred when she denied their motion for judgment n.o.v. The issues are in substance identical. In resolving the issue of whether the motion for judgment should have been granted we are required to take all evidence, together with all inferences that can be legitimately drawn from that evidence, in the light most favorable to the non-moving party and, after so doing, decide whether the jury could legitimately find in favor of the non-moving party. The same test is used in deciding whether a judgment n.o.v. should have been granted.

immediate left of a motorist emerging from the alley on to Falkirk Road.

Grady was driving about 15 miles per hour (mph) north-bound on Falkirk Road as he neared the alley. He got a glimpse of Mr. Brown's vehicle coming out of the alley. Although he expected Brown to stop, Brown's vehicle did not. Instead, Brown's vehicle emerged from the alley and drove directly onto Falkirk Road and into the path of his motorcycle. Grady pulled his clutch, hit the handbrakes, and blew his horn simultaneously in order to avoid Brown's vehicle. He also veered to the left. Despite these maneuvers, the motorcycle and Brown's vehicle collided in the middle of the intersection as Brown was trying to turn left in order to go southbound on Falkirk Road. At the point of impact, Grady's motorcycle was going about 5 mph.

According to Grady, Brown's vehicle struck the right front of the motorcycle. The force of the impact caused his 900 pound vehicle to turn over and caused Grady to be thrown to the ground.

After the accident, Brown backed his vehicle into the alley.

## C. TESTIMONY OF CHRISTINE SORENSEN

Christine Sorensen, an employee of the Baltimore City Fire Department, arrived at the scene of the accident shortly after it occurred. She observed Grady's motorcycle in the roadway and also saw Brown's vehicle parked nearby in the alley. She found the front license tag that had been on Brown's automobile in the middle of Falkirk Road. Other than recalling the point where she located the license tag, she did not remember any particulars as to the scene of the accident.

## D. BROWN'S TESTIMONY

Brown was traveling in the alley going west as he approached the intersection of the alley with Falkirk Road. He

saw and heard Grady's motorcycle when he (Brown) was about two car lengths away from the intersection. When he got to the end of the alley, he stopped his station wagon and then "inched out" into Falkirk Road so that the front of his vehicle was even with the side of the vehicle that was parked to his immediate left. At no time did he move his vehicle further into Falkirk Road than the point even with the side of the parked vehicle. According to Brown, he was stopped for about 5–10 seconds when Grady's motor vehicle started to skid. After skidding for about eight feet, the motorcycle hit the ground and slid an additional distance and then struck the front bumper of Brown's vehicle.

Brown testified that it was his intention to turn left to go southbound on Falkirk Road if the accident had not occurred. He denied that he pulled into the path of the motorcycle.

Brown further testified that he "would say" that the speed limit for Falkirk Road was "about 25" mph. In regard to the speed of the motorcycle prior to the accident, Brown said that the motorcycle was going "pretty fast" and he estimated the speed of the motorcycle as being "at least 30, 35" mph. In Brown's words, the motorcycle "definitely wasn't [going] 15" mph, as Grady testified.

## II.

## ANALYSIS

In deciding whether the trial judge should have entered a judgment as to liability in favor of the appellants, we are required to examine the facts presented at trial, together with all inferences that can reasonably be inferred from those facts, in the light most favorable to Brown, the non-moving party. See Maryland Rule 2–519(a). This means that we must accept as true Brown's version as to how the accident occurred and, to the extent that it contradicts Brown's testimony, reject the version testified to by Grady.

Four sections of the Transportation Article of the Maryland Code (2006 Rep. Vol.) are relevant to the issue here presented.[2] Those are: sections 21–705, 21–101(b), 21–101(f), and 11–151(a).

Section 21–705(c) reads:

(c) *Yielding right-of-way to other approaching vehicles.—* The driver of a vehicle emerging from an alley, driveway, or building shall on entering the roadway, yield the right-of-way to any other vehicle approaching on the roadway.

Section 21–101(b) defines "alley" as meaning "a street that: (1) [i]s intended to provide access to the rear or side of a lot or building in an urban district; and (2) [is] not intended for through vehicular traffic."

Section 21–101(t) of the Transportation Article provides:

---

**2.** The Gradys contend that section 21–403 is relevant. That section reads in pertinent part:

(a) *Signs authorized.*—Preferential right-of-way at an intersection may be indicated by stop signs or yield signs placed in accordance with the Maryland Vehicle Law.

(b) *Stopping at entrance to through highway.*—If the driver of a vehicle approaches a through highway, the driver shall:

(1) Stop at the entrance to the through highway; and

(2) Yield the right-of-way to any other vehicle approaching on the through highway.

The alley was not controlled by a stop or yield sign. Section 21–101(x) of the Transportation Code reads:

(x) *Through highway.*—"Through highway" means a highway or part of a highway:

(1) On which vehicular traffic is given the right-of-way; <u>and</u>

(2) At the entrances to which vehicular traffic from intersecting highways is required by law to yield the right-of-way to vehicles <u>on that highway</u> or part of a highway, in obedience to either a stop sign or yield sign placed as provided in the Maryland Vehicle Law. (Emphasis added).

The word "highway" is defined in section 11–127 of the Transportation Article as follows:

"Highway" means the entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for vehicular travel, whether or not the way or thoroughfare has been dedicated to the public and accepted by any proper authority.

So far as this case in concerned, Falkirk Road was not a "through highway" because the alley did not constitute an "intersecting highway." Therefore section 21–403 is not here relevant.

(t) Right-of-way.—"Right-of-way" means the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian.

Section 11–151(a) of the Transportation Article defines "roadway" as meaning:

(a) *In general.*—"Roadway" means that part of a highway that is improved, designed, or ordinarily used for vehicular travel, other than the shoulder.

The Gradys contend that Brown caused the accident by entering on to a favored highway and thus violated the Boulevard Rule.

Brown contends that at the time of the collision he was not on the favored highway. Instead, according to Brown, he simply "entered the area permitted for parked cars" on the east side of Falkirk Road. Nothing in the record supports the contention that Brown's vehicle was in the area permitted for parked vehicles. To the contrary, it is obvious that parking was not permitted at the point he was stopped (according to Brown's testimony) at the time of the collision. After all, if parking was permitted where Brown stopped, parked vehicles would block the entrance into, and the exit from, the alley.

Brown, at the time he was struck by Grady's motorcycle, was in an area *next to* where parking is permitted. Put another way, if, as in this case, a vehicle was parallel parked along the east curb of Falkirk Road, then a westbound vehicle emerging from the alley on to Falkirk Road would be shielded from oncoming traffic for a few feet. The extent of the "shield" would depend on the width of the parked vehicle and the distance, if any, that the vehicle parked away from the curb.

We agree with the Gradys that even if Brown's testimony is credited, he still was in the "roadway" (i.e., Falkirk Road) when the collision occurred. The reason for our agreement is because Brown's vehicle was stopped in a "part of a highway

that is ... ordinarily used for vehicular traffic." *See* Section 11–151(a), quoted *supra.*

It is true, of course, that the place Brown's vehicle was positioned was not at a place that was ordinarily used *for through traffic* on Falkirk Road. Nevertheless, the place of the collision was, quite obviously, still used for vehicles turning into the alley from either northbound or southbound Falkirk Road.[3]

When Brown emerged from the alley, the requirements of section 21–705 of the Transportation Article required him to "yield the right-of-way to any other vehicle approaching on the roadway." The roadway, in this case, was Falkirk Road.

Having established that Brown's vehicle was in Falkirk Road when the accident occurred, the question becomes: did Brown yield the right-of-way to the motorcycle driven by Grady? In order to answer that question, it is important to set forth Brown's exact testimony as to that point:

---

3. In Brown's brief, as well as in the Gradys' reply brief, the parties discuss, in detail, the case of *Peters v. Ramsay,* 273 Md. 21, 327 A.2d 472 (1974). The *Peters* case did not involve the Boulevard Rule. In *Peters,* the plaintiff was proceeding in a northerly direction on Ritchie Highway while the defendant, who had been southbound, was making a left turn when the accident occurred. The defendant intended to proceed easterly on Hahn Drive, which intersected Ritchie Highway at a right angle on the east side only. *Id.* at 22, 327 A.2d 472. The cars collided at a point characterized as the "right of three northbound lanes in Ritchie Highway, approximately midway between an imaginary extension of the north and south side of Hahn Drive." *Id.* The question before the Court of Appeals in *Peters* was whether "the lane in which the plaintiff was traveling was a part of the main traveled portion of the highway."

   The *Peters* Court said:

   [W]hat constitutes the 'main traveled portion of the roadway' is incapable of a precise definition, and likely will vary with the physical facts prevailing in a particular case. We think these words were generally intended to distinguish that portion of the roadway *actually and ordinarily used* by the traveling public, whether for through driving or making a right turn. . . .

   *Id.* at 28, 327 A.2d 472 (emphasis supplied).

   The language just quoted from *Peters* adds support to the Gradys' contention that Brown's vehicle, at the time of impact, did occupy a portion of the favored roadway. (i.e., Falkirk Road).

Q. [Brown's Attorney]: Was any part of your vehicle protruding into the through lane, the northbound lane in which plaintiff was traveling?

A. No.

Q. At any time prior to this incident occurring was any portion of your vehicle extended into the through lane where plaintiff was traveling?

A. No, like I said, I never went past the parked car.

On cross-examination, Brown essentially reiterated what he had said on direct, viz:

Q. Now, you also said that you never—your car never protruded into the alley? I'm sorry, your car never protruded onto Falkirk; is that correct?

A. No, no.

Q. Is that correct?

A. That's correct.

Q. And you said that you were either even or maybe even a little less than even with the parked vehicle?

A. Right, I was even, right.

Q. Or a little less than even you say?

A. Or a little less, yeah.

If it was true that Brown sat motionless for 5–10 seconds in the area shielded by the parked vehicle while he waited for the motorcycle to pass, then he did what section 21–705(c) required him to do, which was "to yield the right-of-way to any other vehicle approaching on the highway." As mentioned earlier, prior to the accident, Grady was going straight on Falkirk Road. Grady had a right to assume that Brown, the unfavored driver, would stop and yield the right-of-way to him. *Dean v. Redmiles*, 280 Md. 137, 147–48, 374 A.2d 329 (1977). On the other hand, Brown, the unfavored driver, had no reason to believe that Grady would not continue to go straight on Falkirk Road if he (Brown) stayed within the "shield" provided by the vehicle parked next to the east curb. If, during the 5–10 seconds Brown waited, the motorcycle had

continued to go straight on Falkirk Road then no accident would have occurred.

We conclude that under the unusual facts of this case, although the unfavored driver (Brown) was in the boulevard when the accident occurred, the unfavored driver, nevertheless, did yield the right-of-way to Grady, the favored driver. Crucial to the above conclusion is the fact that, according to Brown's version of the events, at no point did Brown block or otherwise intrude into the path that the favored driver had been following prior to the point that Brown's vehicle came to a stop. This makes this case unlike any of the many Boulevard Rule cases that have been decided against the unfavored driver by appellate courts of this state.

The Gradys, of course, take a far different view. In support of their position, they place great reliance on *Brendel v. Ellis,* 129 Md.App. 309, 742 A.2d 1 (1999). According to the Gradys, "there is no significant factual distinction between the conduct of Brown and that of the Defendant motorist in *Brendel.*"

The plaintiff in *Brendel* was the mother and next friend of one Anthony Eckles ("Anthony"). Anthony was riding in a car driven by his cousin, Ronald Ellis, when an accident occurred. *Id.* at 311–12, 742 A.2d 1. Eckles' mother, Joan Brendel, sued Ellis for negligence in the Circuit Court for Baltimore City. *Id.* Ellis, the unfavored driver, was proceeding westbound on West Street when he reached the intersection of West and Hanover streets. *Id.* at 312, 742 A.2d 1. Ellis stopped at a stop sign at the intersection. *Id.* At the point Ellis initially came to a stop, his view to his left was blocked by a Ryder rental truck that was parked next to the curb. What happened next, according to Ellis, was that

he crept out to a spot "maybe a foot or two" past the center line after crossing the northbound lanes to Hanover without seeing any oncoming traffic. Once he "got out far enough, [he] realized there wasn't anything coming," but after he had crossed the center line, he then saw a large white truck coming toward his vehicle. Ellis claimed that when he next attempted to back out of the southbound lanes, the north-

bound Jeep collided with the driver's side of his vehicle. Immediately thereafter, the white truck struck his car on the fender of the front passenger side.

*Id.* at 312, 742 A.2d 1.

At the close of all the evidence, Ms. Brendel, on behalf of her son, made a motion for judgment on the issue of liability. She claimed that Ellis violated the Boulevard Law and was therefore liable for the injuries her son received. The motion was denied. The jury then proceeded to find that Ellis had not been negligent in causing the traffic accident. *Id.* at 311, 742 A.2d 1.

In *Brendel* we held that the trial court erred in denying Ms. Brendel's motion for judgment. *Id.* at 318, 742 A.2d 1. Judge Thieme, speaking for this Court, said:

[T]he instant case seems to us to be a classic pattern of facts under the boulevard law. The collision occurred as Ellis, traveling on an unfavored "stop street," attempted to cross a favored street. Regardless of the slight inconsistencies between Ellis's testimony and that of his young cousin, it is clear that the two collisions directly resulted from Ellis's presence in the intersection. Even assuming that his testimony is accurate, Ellis cannot rely on his excuse that a large Ryder truck, parked in the northbound curb lane, blocked his view of the oncoming Jeep. *See, e.g., Atlantic Mut. Ins. Co. v. Kenney,* 323 Md. 116, 133, 591 A.2d 507, 515 (1991) ("The fact that his view was obstructed did not excuse him; on the contrary it required increased vigilance and caution in order to measure up to the standard of reasonable care under the circumstances then prevailing."); *Dunnill v. Bloomberg,* 228 Md. 230, 235, 179 A.2d 371, 374 (1962) (holding that presence of parked cars did not excuse defendant, but instead "required the exercise of particular caution"). Moreover, even if a truck blocked his left-hand view, Ellis offers no corresponding excuse for his collision with the large truck to his right in the southbound lanes. His effort to "inch" across the intersection did not satisfy his legal obligation to yield, even if jurors chose to believe

that it did, and he is " 'left in the position of one who either did not look when he should have, or did not see when he did look, and this, therefore, requires the finding that he was ... negligent as a matter of law.' " *See Shanahan v. Sullivan,* 231 Md. 580, 583, 191 A.2d 564, 565 (1963) (quoting *Henderson v. Brown,* 214 Md. 463, 472, 135 A.2d 881, 886 (1957)). Neither does the record show that Eckles or either driver of a favored vehicle was contributorily negligent. Ellis's breach of duty thus caused both collisions. *Id.* at 317–18, 742 A.2d 1.

This case does have certain similarities with *Brendel.* Like Brown, the unfavored driver in *Brendel* encountered a parked vehicle to his left and "crept" into the favored highway. But unlike the facts presented in the case *sub judice,* the unfavored driver in *Brendel* did not stop when the front of his vehicle was even with the parked vehicle. Instead, the unfavored driver in *Brendel,* after he passed the shield of the parked rental truck, then crossed two lanes of northbound traffic on the favored highway and entered into the southbound lanes of traffic. The unfavored driver then backed up and was struck by two vehicles—one going north and the other going south. As can be seen, the unfavored driver in *Brendel,* unlike Brown, blocked the path of traffic on the favored highway. Accordingly, we disagree with appellants' contention that there is "no significant factual distinction between the conduct of Brown and that of the Defendant motorist in *Brendel.*"

The purpose of the Boulevard Rule is to "facilitate the free flow of traffic on major thoroughfares by preventing interruptions or delays and insuring the safety of the drivers there." *Id.* at 316, 742 A.2d 1. (citing *Redmiles,* 280 Md. at 147, 374 A.2d 329). If Brown's testimony is credited, he fulfilled the purpose of the Boulevard Rule when he stopped his vehicle in a position where it would not interfere or otherwise block traffic on the favored highway.

For the foregoing reasons, we hold that Brown was not, as a matter of law, guilty of negligence. We therefore need not

reach Brown's alternative argument that a jury issue was presented as to whether Grady was contributorily negligent.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**