## BOB HOLDING CORPORATION *v.* NORMAL REALTY CORPORATION

[No. 20, September Term, 1960.]

*Decided October 18, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Myles R. Eisenstein,* with whom was *Paul R. Rochlin* on
the brief, for the appellant.

Submitted on brief by *Frances Knopf* and *Leonard J. Har-
matz* for the appellee.

HORNEY, J., delivered the opinion of the Court.

The Normal Realty Corporation (Normal or purchaser),
having purchased property at a foreclosure sale made under
the Land Installment Contracts Law (Code [1957], Art. 21,
§§ 110-116,[1] inclusive), filed exceptions to the ratification of
the sale. When the chancellor sustained the exceptions and
ordered the trustee to return the deposit, the Bob Holding
Corporation (Bob or vendor) appealed to this Court.

By a land installment contract dated May 13, 1959, Bob
sold to Cardell T. Farmer and Verdella Farmer, his wife
(Farmers or vendees), the leasehold property at 4116 Norfolk
Avenue in Baltimore City. On August 6, 1959, the Farmers,
being in default under the contract, Myles R. Eisenstein, at-
torney for Bob, notified them that the contract had been
turned over to him for foreclosure and that he would institute
proceedings for that purpose unless all payments then in ar-
rears (aggregating $121.58) as well as "all current payments"

---

1. Unless otherwise noted, all references to sections of the Code
are those which constitute the Land Installment Contracts Law
in Article 21 of the Code of 1957.

were made within a thirty day period. Such notice was intended to be in compliance with the notice of "intention to terminate" required by the provisions of § 113 when a contract is in default. The vendees, being still in default on September 10, 1959, the vendor, by its attorney, pursuant to the provisions of § 115, filed a petition for foreclosure, which also embodied the affidavit of compliance required by § 113(3), and the attorney was appointed trustee to sell the property. On October 20, 1959, the property was sold to Normal. Subsequently the purchaser filed exceptions to the ratification of the sale. Therein it was averred that the termination notice was defective in that it was given by the attorney instead of the vendor and did not set forth the intention of the vendor to terminate the contract; and that the failure of the vendor to comply with the statutory requirements made it impossible for the trustee to deliver to the purchaser a good and merchantable title to the property. The Farmers never complained of the alleged defects in the notice nor did they object to the ratification of sale. The chancellor, in sustaining the exceptions, in effect ruled that the trustee was without authority to make the sale because the vendor had failed to comply with the applicable provisions of §§ 113 and 115.

The vendor on appeal contends (i) that the purchaser had no standing to avail itself of the statutory provisions since such provisions affect only the rights of the vendor and vendees (as those terms are defined in the statute) and (ii) that the termination notice was in substantial compliance with the provisions of § 113.

(i)

Section 110(5) states that:

> " 'Vendee' means the person (other than a corporation) who purchases property subject to a land installment contract, or any legal successor (other than a corporation) in interest to such person, * * *."

It seems that the purchaser at a foreclosure is neither a "vendee" within the statutory meaning of that term nor a person who was meant to be protected by the statute. Moreover, it may be that the applicable provisions of the statute

may have been waived by the failure of the vendees to assert the alleged defect in the termination notice. But, even if we assume without deciding—and we do not so decide—that the vendees *could not* waive the provisions of § 113 [2] and that the purchaser had standing to challenge the sufficiency of the termination notice, we think it is clear that the notice as given was in substantial compliance with the statutory requirements.

### (ii)

The primary objections to the termination notice were that the notice was given by the vendor's attorney instead of by the "vendor" and that the notice did not designate a definite date for the termination of the contract.

Section 113 provides in part:

"(1) *Notice of intention to terminate.*—When the vendee is in default in the payment of any sum due under a land installment contract, or under any covenant, condition or requirement thereof, the vendor shall, as a condition to the exercise of his remedy, first serve written notice on the vendee of intention to terminate, at least thirty (30) days before such action may become effective.

"(2) *Contents of notice.*—The notice shall state:
(a) The amount of the payments in default, and
(b) That the contract shall terminate on a designated day not less than thirty (30) days after the

---

2. In *Spruell v. Blythe,* 215 Md. 117, 137 A. 2d 183 (1957), we held that the provisions of § 111(3), [which was then § 119(3) in the Code of 1951], relating to right of a vendee to cancel a contract until a copy is received by him, was a declaration of public policy and could not be waived. Cf. *Hudson v. Md. State Housing Co.,* 207 Md. 320, 114 A. 2d 421 (1955), where we held that the provisions of § 112(1)(c), [which was then § 120(1)(c) of the Code of 1951], relating to the cost of insurance coverage, could be and was waived by vendee since the contract with respect to insurance costs was voidable at option of vendee. Whether or not the provisions of § 113 may be waived has not been decided by this Court.

delivery or mailing of such notice, unless prior thereto the vendee shall have complied with the terms and conditions in regard to which the default has occurred.

"(3) *Delivery or mailing notice.*—Such notice must be delivered to the vendee personally or be sent to him by registered mail to his last known address, and compliance with this subsection shall be certified to by appropriate affidavit filed in proceedings."

The notice (signed by "Myles R. Eisenstein") actually given to the vendees by the vendor read:

"Your contract of sale with the Bob Holding Corporation has been turned over to me for immediate foreclosure. This is to advise you that your payments are now $121.58 in arrears and that unless this amount with all current payments are brought up to date within 30 days I will be forced to institute foreclosure proceedings."

The purchaser asserts—since the attorney was not the vendor's attorney of record when the notice was sent—that Maryland Rule 5 (d) providing that: " 'Attorney' means attorney at law of record, solicitor in equity of record or other counsel of record in an action," operates to modify Rule 3 (a) that provides: "Where in these Rules it is provided that a party may act, such act may be performed by his attorney except as otherwise provided. Where any notice is to be given, by or to a party, such notice may be given by or to the attorney of such party." Be that as it may, the purchaser seems to have overlooked the fact that these rules of practice and procedure do not affect or control the extrajudicial acts of an attorney as an agent of his client. In this instance, the attorney was clearly the agent of the vendor for the purpose of making a sale of the property described in the contract. The general rule is that an attorney, on behalf of his client, has implied authority to do all acts necessary or incidental to the accomplishment of the purpose for which he was employed or retained. See 3 M.L.E., *Attorney and Client,* § 23.

This would include the giving of notice in a transaction in which notice is required. See Restatement, *Agency 2d,* § 268(2), (1)(c) and Comment *a.*

The principle of the cases is that a notification given by an attorney, who is an agent with authority to act in the premises, is the act of the client. The case of *Bulldog Concrete Forms Sales Corp. v. Taylor,* 195 F. 2d 417 (C.C.A. 7th 1952), is directly in point. There the defendants contended that the notice of sale, under the Indiana Conditional Sales Act, was defective because the plaintiff's attorney signed the notice to sell instead of the "seller" as the statute required. The court held that the notice was properly given, saying at p. 423:

> "The fact that the letter of notification was signed by the attorney is not material. In so doing he was acting as the attorney for and agent of the plaintiff. His act was the act of the plaintiff. The notice was by the 'seller' within the meaning of the Act."

In *Epperson v. Helbron,* 225 S. W. 345 (Ark. 1920), the holding was to the same effect. There, too, a notice of forfeiture of a mineral lease was given by the attorney for the lessor instead of by the lessor personally as required by the lease, yet it was held that the act of the attorney was the act of the lessor. Moreover, it has been held that a client who receives and accepts the services of an attorney is presumed to have affirmed and recognized that the attorney is his agent. *Percy v. Clary,* 32 Md. 245 (1870).

While it is true that an attorney does not have blanket authority to act for a client, it appears that in this case the notice was given under the direction of the vendor, and must be presumed to be its act. This view is reinforced by the basic rule of corporate law that "[a] corporate body can act only by agents." Ballantine, *Corporations* (rev. ed.), § 42; 2 Fletcher, *Corporations,* § 275, and cases cited; *Heckler v. Balto. & Ohio R. Co.,* 167 Md. 226, 173 Atl. 12 (1934) [a corporation can act only through agents] ; *Johnson v. Md. Trust Co.,* 176 Md. 557, 6 A. 2d 383 (1939) [from necessity a corporation must act through its officers and agents]. Cf.

*Treusch v. Shryock,* 51 Md. 162 (1879), where it was held that notice of intention to claim a mechanics' lien signed by an attorney as agent of the materialman was not open to objection. There does not, therefore, since the vendor in the instant case is a corporation, which of necessity must act by an agent, appear to be any valid reason why the corporate agent may not be an attorney.

We conclude that when the notice was given, the attorney was the authorized agent of the vendor for the purpose, at least, of giving and delivering or mailing the notice.

The vendor admits that the notice did not state "a designated day" on which the contract would certainly terminate, but contends that the vendees had more than thirty days within which to ascertain from the vendor or calculate themselves when the contract would end if the default therein had not been made good. The purpose of § 113(1)-(3) is to insure that the vendee shall be notified of the impending termination of his contract. After the notice was delivered or mailed by the vendor, the vendees still had a right to comply with the contract provisions within the statutory period (of not less than thirty days). The fact that the vendees did nothing does not mean that they were not fairly apprised of their rights.

The ingredients only, not the form of the notice, are prescribed by the statute. The general rule is that where the statute does not prescribe a form, the question is whether the notice given constitutes substantial compliance. 66 C.J.S., *Notice,* § 16. In 2 Merrill, *Notice,* § 772, it is said: "When a notification must contain a statement of the date of some event the specification should be definite and accurate. It is sufficient if data are furnished from which the time may be computed with certainty." In *G. Edgar Harr Sons v. Newton,* 220 Md. 618, 155 A. 2d 480 (1959), another mechanics' lien case, in which the notice fairly indicated that it was given in order to comply with the statute, we held that the notice was at least substantial compliance. See also *Reynolds v. Appleman,* 41 Md. 615 (1875) [a notice is sufficient if it contains the necessary facts "in substance or by just and natural implication" (quoting from Graham v. Sangston, 1 Md. 59, 67)]. And see *Howell & Graves v. Curry,* 5 So. 2d

105 (Ala. 1941). We think it is apparent that the vendees were given such information as would enable a person of ordinary perception to understand the nature and purpose of the notice.

A further point is made that since § 113(1) uses the word "terminate," the notice is defective because it used the word "foreclosure." It is at once apparent that there is no substantial difference between the meanings of the two words. Black's Law Dictionary defines "foreclose" as "to shut out; to bar, to terminate." See also *Milmos v. Zimmerman*, 127 Atl. 157 (N. J. Law 1925) [to foreclose means to end or terminate]; *Levin v. Century Indemnity Co.*, 181 N. E. 223 (Mass. 1932) [foreclosure of mortgage means termination of all rights of mortgagor].

Since the termination notice was in substantial compliance with the requirements of § 113(2)(b) the order of court sustaining the exceptions must be reversed.

*Order reversed and case remanded for the entry of an order finally ratifying the foreclosure sale; appellee to pay costs.*