TRUCK INSURANCE EXCHANGE *v.* MARKS
RENTALS, INC.,
t/a Thrifty Rent-A-Car System

[No. 90, September Term, 1979.]

*Decided September 5, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

*Edward C. Mackie,* with whom were *Robert W. Fox* and *Rollins, Smalkin, Weston, Richards & Mackie* on the brief, for appellant.

*Peter F. Axelrad,* with whom were *M. Peter Moser, Gary S. Offutt* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The dispute in this declaratory judgment action, by an insured against its insurance carrier, is over the proper construction of an endorsement to a liability insurance policy.

On March 7, 1968, the insured, Marks Rentals, Inc., obtained a franchise from Stemmons, Inc., authorizing the use of the name "Thrifty Rent-A-Car System" in connection with an automobile rental business. The agreement between Marks Rentals and Stemmons was evidenced by a writing

entitled "Exclusive License Agreement." A condition of the Exclusive License Agreement was that Marks Rentals purchase liability insurance. As a means of satisfying this requirement Stemmons had available a comprehensive liability policy, issued by Truck Insurance Exchange, in which licensees of Stemmons could voluntarily participate. Marks Rentals elected coverage under the Truck Insurance policy and, by a series of endorsements, was made an additional named insured under the master policy through August 1, 1972.

On February 28, 1972, Jesse Himmelfarb, executive vice president for Marks Rentals, was involved in an automobile accident causing personal injury to Bertha Caplan, and resulting in a tort suit brought by Mrs. Caplan. At the time of the accident Miss Himmelfarb was driving her own automobile. Furthermore, we assume for purposes of the present declaratory judgment action, as have the parties, that she was acting within the scope of her employment.[1]

Initially, Mrs. Caplan sued Miss Himmelfarb. Thereafter, on the theory that Miss Himmelfarb was acting within the scope of her employment, Mrs. Caplan amended her declaration to include Marks Enterprises, Inc., a corporation related to Marks Rentals and insured by Hartford Accident and Indemnity Company.[2] Marks Enterprises thereafter joined Marks Rentals. A settlement was eventually reached between Mrs. Caplan and Marks Enterprises, whereby Hartford paid $300,000.00. As a third party plaintiff in the tort case, Hartford still seeks contribution from Marks Rentals.

Truck Insurance was notified by Marks Rentals of the impending tort suit and was requested to defend and indemnify Marks Rentals for any amounts for which it would become liable. Truck Insurance disclaimed coverage, and Marks Rentals then brought the present action in the

---

1. This issue is one which must be resolved in the underlying tort suit, and not in the declaratory judgment action between the insurer and its insured. Brohawn v. Transamerica Ins. Co., 276 Md. 396, 405-407, 347 A.2d 842 (1975).

2. Miss Himmelfarb was apparently an officer or employee of Marks Enterprises as well as Marks Rentals.

Circuit Court for Baltimore County, pursuant to the Uniform Declaratory Judgments Act, Maryland Code (1974), § 3-401 *et seq.* of the Courts and Judicial Proceedings Article.

The issue presented for resolution by the trial court, namely whether Truck Insurance was required to defend Marks Rentals in the tort action and pay any judgment rendered against Marks Rentals in that suit, depended entirely upon the interpretation given to the language of Endorsement No. 4, extending the insurance under the master policy to Marks Rentals. The pertinent language of the endorsement is as follows:

"IN CONSIDERATION OF THE PREMIUM, THE THRIFTY RENT-A-CAR SYSTEM FRANCHISED LICENSEE NAMED IN THE CERTIFICATE EXTENDING COVERAGE IS MADE AN ADDITIONAL NAMED INSURED FOR PASSENGER CARS HE MAY RENT TO OTHERS, OR OPERATE UNDER HIS THRIFTY RENT-A-CAR FRANCHISE ...."

Marks Rentals contended at trial that the endorsement provided coverage not only for rental vehicles but for all passenger cars used in connection with its automobile rental business. Truck Insurance sought a more restrictive interpretation, arguing that the language incorporated by reference the Exclusive License Agreement between Marks Rentals and Stemmons. According to Truck Insurance, the only operation of automobiles specifically addressed in that agreement is their rental use. Truck Insurance argued that since Miss Himmelfarb's automobile was not operated pursuant to a specific rental agreement issued by Marks Rentals, no coverage was afforded under the policy.

At trial "expert" testimony was offered as to the meaning of the language in question. Each party, over the objection of the other, presented the testimony of an individual having a background in the insurance field. However, neither "expert" witness testified as to whether the language of the endorsement had a special or particular meaning in the

insurance trade. Instead, both witnesses merely stated their conclusions as to whether or not, under the endorsement, Jesse Himmelfarb's vehicle was covered under the circumstances.

At the close of all of the evidence both parties moved for directed verdicts. The trial court refused to rule on the motions at that time, reserving its decision, pursuant to Maryland Rule 552 c, until the jury returned a verdict. The court, over the objection of Marks Rentals, decided to require the jury to return a special verdict. See Rule 560. The two questions submitted to the jury, and the answers given, were as follows:

### "ISSUE I

"Does the defendant, Truck Insurance Exchange, owe a duty to the plaintiff, Mark Rentals, Inc., to defend, on its behalf, case No. 83893?

"Answer: Yes.

### "ISSUE II

"Does the defendant, Truck Insurance Exchange, owe a duty to the plaintiff, Mark Rentals, Inc., to pay any judgment obtained against Mark Rentals, Inc. in case No. 83893?

"Answer: No."

Upon return of the verdict, Marks Rentals moved for judgment N.O.V. and for a new trial. The trial court denied both motions, and filed a declaratory judgment embodying the jury's determinations.

Upon Marks Rentals' appeal, the Court of Special Appeals, in an unreported opinion, reversed, holding that the language of the endorsement unambiguously covered any liability of Marks Rentals as a result of the accident. This Court then granted Truck Insurance's petition for a writ of certiorari.

Although we agree with the petitioner that the Court of Special Appeals erroneously held Endorsement No. 4 to be

unambiguous, we nevertheless conclude that Marks Rentals was covered for the accident in question, and we shall affirm the judgment of the Court of Special Appeals.

Although language which is merely general in nature or imprecisely defined is not necessarily ambiguous, *Allstate v. Humphrey,* 246 Md. 492, 496, 229 A.2d 70 (1967), an ambiguity does arise if, to a reasonably prudent layman, the language used is susceptible of more than one meaning. *C & H Plumbing v. Employers Mut.,* 264 Md. 510, 515, 287 A.2d 238 (1972); *Aetna Cas. & S. Co. v. Brethren Mut. Ins.,* 38 Md. App. 197, 205, 379 A.2d 1234 (1977), *cert. denied,* 282 Md. 730 (1978); *Della Ratta, Inc. v. Amer. B. Com. Dev.,* 38 Md. App. 119, 130, 380 A.2d 627 (1977). In the context of the vehicle involved in this case, we believe that the words of the endorsement, namely "operate under his Thrifty Rent-A-Car franchise," would be ambiguous to a reasonably prudent person.

Of course, where contractual language is ambiguous, extrinsic evidence is admissible to show the intention of the parties. *Burroughs Corp. v. Ches. Pet. & Supply,* 282 Md. 406, 411, 384 A.2d 734 (1978), and cases there cited. And if disputed factual issues are presented by the evidence bearing upon the ambiguity, construction of the contract is for the jury, *Gov't Employees Insur. v. DeJames,* 256 Md. 717, 720, 261 A.2d 747 (1970); *Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 610, 155 A.2d 484 (1959); 22 Appleman, *Insurance Law and Practice* § 12853 (1979). However, where there is "no real dispute as to the facts which are pertinent to the question of coverage," which are "shown by evidence properly admissible," construction is for the court. *Ebert v. Millers Fire Ins. Co., supra,* 220 Md. at 610. *See Winterwerp v. Allstate Ins. Co.,* 277 Md. 714, 717, 357 A.2d 350 (1976); *Allstate v. Humphrey, supra,* 246 Md. at 496.

In the instant case, the only extrinsic evidence bearing upon the ambiguity in the language of the endorsement was the testimony of the two "expert" witnesses. But, by its very nature, the testimony given by these witnesses was improper and ought to have been excluded. An "expert's" individual opinion as to the meaning of non-technical words

or phrases is simply not a proper subject for expert testimony. The Court of Special Appeals very succinctly set forth the law regarding this issue in *Della Ratta, Inc. v. Amer. B. Com. Dev., supra,* 38 Md. App. at 131, saying:

> "Expert testimony will not be admitted to prove to a court or jury the proper or legal construction of any instrument of writing. Where parol or extrinsic evidence ˙ is otherwise admissible, however, in construing a contract, expert testimony is admissible to aid the fact finder in interpreting words or phrases in the instrument which have a peculiar meaning in a trade, business or profession. 31 Am. Jur. 2d, *Expert and Opinion Evidence,* § 171, p. 736, provides:
>
> > 'The principles admitting opinion evidence do not permit a party to a contract to testify as to the effect of the language of the contract as he or she understood it; nor do they permit any other witness to testify as to what is meant by statements in a document prepared by another, unless the words, phrases, or statements used have some unusual or technical meaning peculiar to a certain trade, business, or profession. Thus, expert testimony cannot be received to prove to the court or jury what the proper or legal construction of any instrument of writing is. If, however, words have an unusual meaning or application in a peculiar trade, persons familiar with such trade may testify to such meaning and thereby assist the jury or court in interpreting the written or verbal passage in which the words occur. . . .' "

*See Levi v. Schwartz,* 201 Md. 575, 586, 95 A.2d 322 (1953); *Washington Fire Insurance Company v. Davison and Symington,* 30 Md. 91, 103, 104 (1869). In the case at bar, neither "expert" testified that the language in question had a particular or peculiar trade usage. Each merely stated that he believed the language to mean one thing or the other.

Consequently, there were no disputed issues of fact presented by properly admissible extrinsic evidence.

We have consistently rejected the rule that insurance policies are always to be construed most strongly against the insurer. Nevertheless, it is a sound principle of contract construction that where one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against that party. *National Grange Mut. Ins. v. Pinkney,* 284 Md. 694, 705-706, 399 A.2d 877 (1979); *Aragona v. St. Paul Fire & Mar. Ins.,* 281 Md. 371, 375, 378 A.2d 1346 (1977); *McKoy v. Aetna Cas. & Sur. Co.,* 281 Md. 26, 31, 374 A.2d 1170 (1977); *Ebert v. Millers Fire Ins. Co., supra,* 220 Md. at 611.

In this case Truck Insurance was solely responsible for preparing the endorsement extending coverage to Marks Rentals. Marks Rentals urges us to assign to the language, "or operate under his Thrifty Rent-A-Car franchise," a construction which would cover any passenger car authorized to be driven and driven on Marks Rentals' automobile rental business. The language of the endorsement is reasonably susceptible to this construction. In light of the principle that ambiguity in the language should be construed against the party preparing it, we adopt the construction urged by Marks Rentals.

Furthermore, this conclusion is reinforced by the broad language of the master policy to which the endorsement related. The master policy covered the insured's personal injury liability resulting from the operation of "owned," "hired" and "non-owned" automobiles. Under the definition section of the policy, an "owned" automobile is "an automobile owned by the Named Insured"; a "hired" automobile is "an automobile used under contract in behalf of, or loaned to, the Named Insured provided such automobile is not owned by or registered in the name of (a) the Named Insured or (b) an executive officer thereof"; and a "non-owned" automobile is *"any other automobile."* (Emphasis added.) At trial, it was conceded by Truck Insurance that the Himmelfarb vehicle, if operated in the scope of

her employment for Marks Rentals, would be covered under the language of the master policy. Of course, if the provisions of the endorsement were in conflict or inconsistent with the master policy, the endorsement would control to the extent of the conflict or inconsistency. *Buntin v. Continental Ins. Co.,* 583 F.2d 1201, 1205-1206 (3d Cir. 1978); *MFA Mutual Insurance Company v. Dunlap,* 525 S.W.2d 766, 769 (Mo. App. 1975); *Inter-Insurance Exch. v. Westchester Fire Ins. Co.,* 25 Wis. 2d 100, 130 N.W.2d 185, 188 (1964). However, generally an endorsement and the main policy to which it relates together constitute a single insurance contract, and an effort should be made to construe both in harmony. *Mills v. Judd,* 256 Md. 144, 147, 259 A.2d 267 (1969); *Erie Ins. Exchange v. Gosnell,* 246 Md. 724, 731, 230 A.2d 467 (1967); *Inter-Insurance Exch. v. Westchester Fire Ins. Co., supra;* 13A Appleman, *Insurance Law and Practice* §§ 7537-7539 (1976). Considering the ambiguity in the endorsement language "operate under his ... franchise," the words of the endorsement are not necessarily in conflict or inconsistent with the master policy. Therefore, construing the two documents harmoniously furnishes additional support for Marks Rentals' position.

*Judgment affirmed.*
*Petitioner to pay costs.*