562 A.2d 772

**DMH JOINT VENTURE**

v.

**Dorothy M. HAHNER, et al.**

**No. 1708, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Aug. 31, 1989.
Certiorari Denied Dec. 20, 1989.

258

G. Vann Canada, Jr. (Miles & Stockbridge, on the brief), Rockville, for appellant.

Peter F. O'Malley and Robert N. Stokes (Thomas P. Smith and O'Malley, Miles & Harrell, on the brief), Upper Marlboro, for appellees Frances L. Miller and Riggs Nat. Bank.

A. Lee Haislip, Temple Hills, for appellee, Dorothy M. Hahner.

John Edward Powell and Chaikin & Karp, P.C., Rockville, on the brief, for appellee, John L. Miller.

Argued before BISHOP, ROSALYN B. BELL and KARWACKI, JJ.

BISHOP, Judge.

DMH Joint Venture ("DMH") appeals from an order of the Circuit Court for Prince George's County (Ahalt, J.) which denied DMH's motion for summary judgment and granted the motion for summary judgment filed by the appellees: Dorothy M. Hahner; William M. Densford; William E. Miller, II; Frances L. Miller and The Riggs National Bank of Washington, D.C., co-trustees under the will of John W. Miller; and John L. Miller and Associates ("Appellees").

In denying DMH's motion the court ruled that appellees, as the sellers of a certain piece of agricultural land, had adequately notified DMH, the buyer of that land, of the potential imposition by the State of an "agricultural land transfer tax," Subtitle 3 of the Tax Property Article, and, therefore, the appellees were not liable under § 13–308 of the Tax Property Article which provides that:

**Notice of tax liability.**

(a) *Notice to buyer.*—When a contract is executed for the transfer of any interest in agricultural land, the seller shall notify the buyer, in writing, that the transfer may be subject to the agricultural land transfer tax.

(b) *Liability for failure to notify.*—If a seller fails to notify a buyer as required by subsection (a) of this section, the seller is liable to the buyer for the agricultural land transfer tax paid by the buyer.

The circuit court judge then ruled, by way of granting appellees' motion, that, by the express terms of the parties' land sales contract, the agricultural transfer tax was to be paid one-half by the buyer and one-half by the sellers.

On appeal DMH raises the following issues:

I.  Did the circuit court err in its initial holding that DMH is not a "buyer" within the purview of § 13–308?

II.  Did the circuit court judge err in his alternative conclusions that a buyer's actual knowledge of the agricultural land transfer tax satisfies the statutory requirement that the seller give the buyer written notice of such a tax and that DMH had actual knowledge of that tax.

III.  Assuming that DMH was adequately notified of the agricultural land transfer tax, thereby satisfying the requirements of § 13–308(a), did the circuit court judge err in ruling by way of summary judgment that, under the terms of the land sales contract, the parties agreed that each would pay one-half of the agricultural land transfer tax?

Although we rule in the appellees' favor on only one of these three issues, that being number III, we, nevertheless, affirm the judgment.

## FACTS

Prior to August 1987, the appellees were tenants in common of an approximately 42 acre tract of land (the "Property") located in Oxon Hill, in Prince George's County.  In January 1986, Harvey Maisel, individually, and on behalf of John Driggs, and Maisel–Hollins Development Company, Inc. (which included Michael Hollins) prepared a written offer (the "first offer") to purchase the Property. That offer provided in relevant part that:

All Documentary Stamps, Transfer Taxes and Recordation Taxes are to be paid for equally by Seller and Purchaser, *provided, however, any transfer or other taxes pertaining to any rezoning or farmland or timberland assessment for the Property shall be paid solely by Seller* to the extent that they exceed the regular rates for transfer and recordation taxes.

(Emphasis supplied.)  (The undisputed evidence indicates that both Maisel and Hollins took special notice of the

provision concerning the payment of the agricultural land transfer tax.)

When the first offer was rejected by the appellees the parties entered further negotiations. On August 14, 1986, these negotiations culminated in an "Agreement of Sale" between the appellees, as sellers, and the *individuals* who had made the first offer (Harvey Maisel, Michael S. Hollins, and John Driggs) as the buyers. This agreement, which provides in general terms that the buyers were to pay $5,237,277.00 for the Property and set August 3, 1987 as the closing date, also directs, at "Section 9", that:

The cost of preparing all necessary conveyancing papers, the title examining charges, notary fees and recording taxes incurred in recording the deed, and all other ordinary settlement charges shall be paid by Purchaser. Transfer taxes shall be split equally between Seller and Purchaser.

Subsequent to the signing of the August 14 Agreement of Sale, but before the eventual closing date, Driggs, Maisel and Hollins entered into a joint venture, DMH, which had as its purpose the acquisition and development of the Property. The three individuals assigned to DMH "all their right, title, interest and estate" in the Agreement of Sale. Thereafter, on August 3, 1987, the closing date under the Agreement, appellees conveyed the Property to DMH; this was apparently the first time that appellees were made aware of the assignment.

When the deed to the Property was subsequently recorded the following taxes were assessed against the Property: a State Agricultural Land Transfer Tax of $238,327.95, as provided for in §§ 13–301 *et seq.* of the Maryland Tax Property Article (1986); a Prince George's County transfer tax, pursuant to Prince George's County Code § 10–188; and a general State transfer tax applicable to all real estate transactions, Md. Tax Property Code Ann. §§ 13–202 to 13–203. This assessment precipitated a dispute between the parties as to who should pay the agricultural land transfer tax. Appellees asserted that, pursuant to Section 9 of the

Agreement of Sale, one-half of each of the taxes, including the agricultural land transfer tax, should be paid by the buyer and one-half by the sellers. DMH, on the other hand, argued that appellees failed to provide the written notice required by § 13–308(a) and, therefore, under § 13–308(b) appellees were solely responsible for the value of the tax. To avoid any further delays in the transaction, the parties entered into an agreement whereby each paid one-half of each tax and DMH reserved the right to institute legal proceedings to recover any amount paid by it for the agricultural land transfer tax.

DMH subsequently filed suit, under § 13–308(b), in which it asserted that appellees, as the sellers of property subject to an agricultural land transfer tax, had failed to provide DMH, as the buyer, of written notice of such tax and that under § 13–308(b) appellees were, therefore, liable for the full amount of that tax. Both sides filed motions for summary judgment.

The circuit court judge, ruling on the motions for summary judgment, held that:

(1) DMH, as the assignee of the land sales contract, is not a "buyer" entitled to the protections of § 13–308.

(2) Assuming that DMH is a "buyer" under § 13–308, where the buyers of property which is subject to an agricultural land transfer tax have *actual* notice that the property is subject to such a tax, the requirements of § 13–308(a), which calls for *written* notice, are satisfied.

(3) The admissions by Maisel and Hollins that they considered that the Property carried an agricultural land transfer tax, coupled with the court's observations of the buyers' sophistication in real estate matters, indicated that the buyers did have actual knowledge of the agricultural land transfer tax and, therefore, the notice requirements of § 13–308 were satisfied.

(4) The parties agreed that all transfer taxes would be paid one-half by each party and pursuant to § 13–102 of the Tax Property Article that agreement controls.

The court then issued an order which, in effect, maintained the economic *status quo.*

## Scope of Review

The circuit court judge, in entering summary judgment under Maryland Rule 2–501, determined that "there was no genuine dispute as to any material fact and that ... [appellees were] entitled to judgment as a matter of law." Md. Rule 2–501(e). On review of this decision:

> [W]e [too] are concerned with whether there was a dispute as to any material fact and if not, whether the moving party was entitled to judgment as a matter of law. In considering the duly shown facts, all reasonable inferences deducible therefrom must be considered in a light most favorable to the party opposing the motion and against the party making the motion.

*Liscombe v. Potomac Edison Co.,* 303 Md. 619, 621, 495 A.2d 838 (1985).

## I.

## Is DMH a "Buyer"

■ Section 13–308(a) provides that "[w]hen a contract is executed for the transfer of any interest in agricultural land, the seller shall notify the buyer ... that the land may be subject to the agricultural land transfer tax." The circuit court judge concluded that, since the "buyer" under this section must be a party to the transaction "when a contract [of sale] is executed," § 13–308 did not provide any protection for a subsequent assignee of the contract who, although a buyer, was not so "when a contract [of sale] was executed." We disagree with the court's conclusion and hold that DMH is a "buyer" entitled to the benefits of § 13–308.

Assuming, but only for purposes of this discussion, that appellees did not satisfy the notice requirements of § 13–308(a), under § 13–308(b), at the moment that appellees and the individual buyers executed the August 14, 1986

"Agreement of Sale", the appellees became liable to the buyers to pay the full amount of the agricultural land transfer tax resulting from the August 14 Agreement. Consequently, when the individual buyers assigned "all their right, title, interest and estate" in the "Agreement of Sale" to DMH, DMH, as assignee, took "the subject of the assignment with all rights and remedies possessed by or available to the assignor," *Motor Vehicle Security Fund, State of Maryland v. All Coverage Underwriters, Inc.*, 22 Md.App. 586, 614, 325 A.2d 115 (1974), including the statutory remedy for the transfer tax under § 13–308.

Appellees contend that the practical effect of this holding will be "that any person or entity intervening, by acquisition or development of some right or interest in or under a contract of sale, between the time of the execution of a contract for the sale of real property and the ultimate conveyance by deed, would be entitled to [§ 13–308(a)] notice," from the seller. The statute, however, does not require that notice be given *after* the execution of the contract of sale but only *"when* a contract is executed." Since the seller executes a contract of sale only with the buyer/assignor (and not subsequent assignees) the seller would not be required, under our interpretation of § 13–308, to provide notice to subsequent assignees. We note that § 13–308(a) requires that notice be provided when a *"contract"* is executed and not when a *"deed"*, Md. Real Property Code Ann. § 1–101(c) (1986), is transferred.

Appellees, citing *Strickland v. Sellers*, 78 F.Supp. 274, 276 (1948) and *Snodgrass v. Sisson's Motor Home Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321, 322–23 (1978), argue that the right conferred upon the buyer by § 13–308 is a penalty provision and is, therefore, not assignable. *Id.* The applicable rule, as stated in 6A C.J.S. *Assignments* § 42 (1975), is that:

> A statutory right of action is generally assignable, except where it is conferred on one of a particular class, in the nature of a personal privilege, or penalty available to him alone.

. . . .

A statutory right of action is assignable where the statute imposes a contractual relation, and not a penalty in the strict sense.

We reject appellees' classification of § 13–308 as a strict penalty provision or personal privilege. Rather, we find that this provision "imposes a contractual relation" between the buyer and seller by defining which of the two must pay the agricultural land transfer tax where the writings of the parties are silent on the issue. *See* § 13–102 and § 13–308.

## II.

### *Notice*

■ We also reject the circuit court judge's interpretation that the § 13–308(a) requirement, that notice of the agricultural land transfer tax be "in writing", is satisfied where the seller fails to provide the *written* notification but the buyer has *actual* notice of such a tax.

The issue here is essentially "[w]ill knowledge of the facts of which notification is to be given, acquired informally, take the place of the law's punctilios?" 1 M. Merrill, Merrill on Notice § 505 (1952). Merrill states as the general rule that:

If it [(notice)] is simply for the purpose of giving information, or of creating a likelihood that information will be received by the noticee, knowledge, which accomplishes this end, is an acceptable substitute. If, on the other hand, the notification is required for some formal purpose, such as the preservation of a record, or impressing the noticee with the significance thereof, knowledge will not take its place.

This position is in accord with the few Maryland appellate decisions which touch upon the issue. The Court of Appeals has held on the one hand that, "the requirement of notification purposed to inform may be satisfied by proof of actual notice [(knowledge)]." *State v. Barnes,* 273 Md. 195, 210, 328 A.2d 737 (1974); *see also McClay v. Maryland*

*Assemblies, Inc.*, 269 Md. 465, 476–77, 306 A.2d 524 (1973) (Board's failure to provide appellants with proper statutory notice of a hearing was of no effect in light of appellant's appearance at the hearing); *Clark v. Wolman*, 243 Md. 597, 600, 221 A.2d 687 (1966) (to same effect as *McClay* ). But, on the other hand, the courts have held that strict compliance with the statutory notification procedures *are* required, for example, to cancel a workers' compensation insurance policy because the purpose of the statute is not just to notify the employer, but, more importantly, to insure that a substitute policy is obtained. *Pressman v. State Accident Fund*, 246 Md. 406, 412–13, 228 A.2d 443 (1967). Moreover, the logic underlying Merrill's statement of the rule is also in accord with the purpose underlying the Maryland cases interpreting a statutory notice provision; that being to "carry out the intent of the General Assembly." *Compare Dean v. Pinder*, 312 Md. 154, 161, 538 A.2d 1184 (1988) *and* Merrill § 505.

Undoubtedly a purpose of the notice provision embodied in § 13–308 is to inform the potential buyer of the impending agricultural land transfer tax and this purpose would certainly be satisfied by the buyer's *actual* knowledge of such a tax. However, the words of the statute, which are the primary source of the legislature's intent, *Dean*, 312 Md. at 161, 538 A.2d 1184, indicate that information dissemination is not the primary objective of § 13–308; the primary objective is to preserve the State's agricultural land.

The agricultural land preservation motive behind the agricultural land transfer tax is evidenced by the overall statutory scheme. Section 13–306 of the Tax Property Article requires that two-thirds of the revenues generated by the agricultural land development tax are to be "remitted into the Maryland Agricultural Land Preservation Fund...," § 13–306(a)(2), and used "to preserve agricultural land and woodland," Md. Agricultural Code Ann. §§ 2–501, and 2–505 (1985). The tax supports this preservation motive in two ways: it generates revenues to enable the State to purchase agricultural land preservation easements, Agri-

cultural Code § 2–505(c)(3); and, secondly, the tax inhibits property owners from transferring agricultural land to non-agricultural uses, *see* Md. Tax Property Code § 13–305.

Although the revenue generating motive of § 13–306 is furthered regardless of whether the seller gives the buyer written notice of transfer tax (from a revenue generating position, it does not much matter who pays the tax, so long as it is paid), the transfer inhibiting motive is not fully realized where actual written notice is avoided. This is so because, when followed, the written notification provision in the Tax Code forces the parties to take *written* notice of the five percent tax "when the contract is executed." The statute thereby insures that the transfer inhibiting objective is not only expressly recognized, but that it is given its fullest effect before the buyer agrees to pay a price which is appropriate only for the commercial or residential development of the land and which, ordinarily, far exceeds the land's agricultural worth; a result which would force the development of the land. The full effect of the tax must be recognized and its significant inhibiting effects overcome and made part of the basis of the negotiations.[1] Additionally, the fact that, under § 13–308(b), the penalty for silence falls upon the seller further supports the statute's transfer inhibiting motive as the *seller* who has the option of retaining the land in its agricultural or woodland status pays, not the buyer.

■ We hold, therefore, that § 13–308 of the Tax Property Article, which requires that the buyer receive written notice of a potential agricultural land transfer tax, is not satisfied by the buyer's *actual* notice; *written* notice must be given. This conclusion, however, does not end our discussion because, unlike the trial court, we find that DMH did in fact receive written notification of the agricultural land transfer tax and that that notice was legally sufficient to satisfy the requirements of § 13–308(a).

---

1. In this sense, § 13–308 can be considered analogous to Hester Prynne's scarlet letter. "The Scarlett Letter" by Nathaniel Hawthorne.

Section 13–308 states only that "the seller shall notify the buyer, in writing, that the transfer may be subject to the agricultural land transfer tax ..." it does not "prescribe a form [for the notice]." *Bob Holding Corp. v. Normal Realty Corp.*, 223 Md. 260, 267, 164 A.2d 457 (1960). In such a case the question becomes "whether the notice given constitutes substantial compliance [with the statute]." *Id.* at 267, 164 A.2d 457; *Ottenheimer Publishers, Inc. v. Employment Security Administration*, 275 Md. 514, 519–20, 340 A.2d 701 (1975); *Montgomery County v. Glassman*, 245 Md. 192, 200–204, 225 A.2d 448 (1967), and that issue is one for the *courts* to decide, not a jury. Merrill § 754 ("[W]hether the notification given complies with the statutory standard is a question for the court, unless more than one inference of fact can be drawn as to the impression it should reasonably convey.); *see also Peters v. Ramsay*, 273 Md. 21, 25–26, 327 A.2d 472 (1974).

The only "writing", § 13–308(a), between the buyer and seller "when the contract [*sub judice* was] executed," *id.*, was the August 14, 1986 Agreement of Sale itself. Consequently, the issue before this Court is whether the provisions in the August 14 Agreement satisfied the requirement of § 13–308(a) that the "seller notify the buyer ... that the transfer may be subject to the agricultural land transfer tax." *Id.* We hold that it did.

The Maryland law governing the interpretation of contracts was summarized for this Court by Judge Garrity in *Walker v. Fireman's Fund Ins. Co.*, 66 Md.App. 687, 691–92, 505 A.2d 884 (1986):

[W]e construe the instrument as a whole to determine the intention of the parties. *Aragona v. St. Paul Fire and Marine Ins. Co.*, 281 Md. 371, 378 A.2d 1346 (1977). In so doing, we "should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pacific Indemnity [Company v. Interstate Fire and Casualty Company*, 302 Md. 383, 388, 488 A.2d 486 (1985) ]. Furthermore, words in a ... [contract] should be given their ordinary

and accepted meaning, the test being "what meaning a reasonable prudent lay person would attach to the term." *Id.*

The court ... may construe unambiguous ... provisions as a matter of law. Additionally, ... language is not ambiguous simply because it is general in nature or undefined by the policy. *Truck Ins. Exchange v. Marks Rentals, Inc.*, 288 Md. 428, 433, 418 A.2d 1187 (1980). In fact, ambiguity arises only if the language is reasonably susceptible to more than one meaning by a reasonably prudent layperson. *Id.* In the event that language is found to be ambiguous, extrinsic evidence may be admitted to determine the intention of the parties. If the extrinsic evidence clarifies the ambiguity, interpretation of the contract is a matter for the court. If the extrinsic evidence fails to clarify and the ambiguity persists, then the interpretation of the contract becomes a matter for the jury to decide. *Pacific Indemnity,* 302 Md. at 389, 488 A.2d 486.... [ (Additional citations omitted.) ]

Section 9 of the August 14 Agreement states that "[t]ransfer taxes shall be split equally between the seller and purchaser." In light of the fact that the property was subject to no fewer than three "transfer taxes" and that the parties' disagree as to which taxes this phrase refers, we find that this language is ambiguous and subject to interpretation with the aid of the extrinsic evidence. *Walker, supra.* Furthermore, as will be explained below, because "the extrinsic evidence clarifies the ambiguity, [the] interpretation of [this] contract is a matter [of law] for the court." *Id.* 66 Md.App. at 692, 505 A.2d 884.

The first offer of January 1986, which was drafted by essentially the same individuals who were the buyers under the final Agreement, provided that the sellers would pay any farmland assessment. The subsequent agreement between the drafters of the initial offer, who by that time were acting under the name of their joint venture rather than as individuals, made the very significant change that all transfer taxes would be split evenly between the parties.

Given the significant financial impact of this change, the sophistication of the parties, the length of their negotiation, and the detail of their final Agreement, the only meaning that "a reasonable prudent layperson would attach to the term", *Walker*, 66 Md. at 691, 505 A.2d 884, "transfer taxes", as used in the final agreement, is that ascribed by the Appellees; the parties to the Agreement intended that the phrase "transfer taxes", as used therein, specifically includes the Agricultural Land Transfer Tax imposed under §§ 13–301 *et seq.* of the Tax Property Article. Any other construction would yield the unreasonable interpretation that a major expense that was part of the original offer between these sophisticated negotiators was totally ignored by them in their detailed final agreement.

Accordingly, based on the evidence in this case, where the parties to the agreement for the sale of land, which all were aware was potentially subject to the imposition of the Agricultural Land Transfer Tax, by their use of the phrase "transfer taxes" intended to include therein the Agricultural Land Transfer Tax. The provision in the agreement of sale that the parties would split all "transfer taxes" was sufficient under the facts of this case to establish written notification to the buyer "that the transfer may be subject to the agricultural land transfer tax" in accordance with § 13–308(a) of the Tax Property Article. Therefore, the sellers/appellees are not liable under § 13–308(b) for the full amount of the agricultural land transfer tax. The buyer received the statutorily mandated written notification of the possible imposition of that tax.

## III.

### *Liability Under the Contract*

Since we have determined which taxes are involved, the question whether the parties are each liable under the *Agreement* (not the statute) for one-half of the agricultural land transfer tax depends upon the construction of Section 9 of the Agreement of Sale. Where, as here, "the terms of

a contract (with reference to the payment of the taxes) are clear and unambiguous, the construction of those terms is within the province of the court." *H & R Block, Inc. v. Garland,* 278 Md. 91, 97, 359 A.2d 130 (1976); *James Julian, Inc. v. State Highway Administration,* 63 Md.App. 74, 95, 492 A.2d 308 (1985). The contract specifically requires that "[t]ransfer taxes shall be split equally between Seller and Purchaser" and the parties are, therefore, bound by this section and § 13–102 of the Tax Property Article (which provides that the terms of the parties' contract control) each to pay one-half of all transfer taxes, including the agricultural land transfer tax imposed by §§ 13–301 *et seq.* of the Tax Property Article.

JUDGMENT AFFIRMED; COSTS TO BE PAID ONE-HALF BY APPELLANT AND ONE-HALF BY APPELLEES.

ROSALYN B. BELL, Judge.

The majority holds that Md.Tax–Prop.Code Ann. § 13–308(a) (1986), which requires the seller to give written notice to the buyer of a potential agricultural land transfer tax, is mandatory and that actual knowledge on the part of the buyer will not satisfy this requirement. The majority also concluded that the contractual provision specifying that "transfer taxes" be split equally between the buyer and the seller was sufficient written notification. I concur in the result limited to the facts of the case, although I do not agree that actual knowledge may not substitute for the statutory written notification required here.

Maryland case law has consistently held that notification, purposed to inform, may be replaced by actual knowledge. *Rolfe v. Clark,* 269 Md. 14, 18, 304 A.2d 231 (1973); *Tyson v. Masten Lumber & Supply Co.,* 44 Md.App. 293, 302, 408 A.2d 1051 (1979), *cert. denied,* 287 Md. 758 (1980). This is especially so where the knowledge has been acted upon without reliance upon the absence or defects of the notice. *Clark v. Wolman,* 243 Md. 597, 600, 221 A.2d 687 (1966). Therefore, we must first look to the legislative history to

determine the purpose of the notification provision. Second, we must determine whether DMH acted in reliance upon the absence of the notice.

Before the notification provision was codified in the Property Tax Article in 1985, it was contained in Md.Code Ann. Art. 81, § 278F(k) (1957, 1980 Repl.Vol., 1984 Cum.Supp.).[1] The preamble to Art. 81, § 278 provides that it is for the purpose of

"imposing a tax on the transfer of agricultural land under certain circumstances; providing for the calculation, administration, and collection of this tax; *providing certain restrictions on local agricultural transfer taxes;* and providing for the use of the proceeds of this tax *and the tax on certain planned development lands.*" (Emphasis in original.)

1981 Md.Laws Ch. 808. Furthermore, the preamble for this section's recodification in the Property Tax Article (§§ 13–301 *et seq.*) provides that its purpose is to revise

"the laws relating to State transfer tax, agricultural land transfer tax, county transfer tax, and transfer taxes generally, including imposition, exemptions, rates, calculation, payment, and administration, and to distribution of transfer tax revenues...."

1985 Md.Laws Ch. 8.

Both preambles indicate that the major thrust behind these provisions is the assessment of taxes and the collection of revenues. While both provide that a certain portion

---

**1.** A comparison of Art. 81, § 278F(k) with § 13–308(a) of the Property Tax Code reveals that the modifications in the language clarified the requirement. Article 81, § 278F(k) required that, if the land *will be* subject to the agricultural land transfer tax, the buyer must be notified that the land transferred *may be* subject to the tax. This creates an inconsistency between what the seller knows (*i.e.,* that the land will be subject to the tax) and what information must be given to the buyer (*i.e.,* that the land may be subject to the tax). Section 13–308(a), on the other hand, provides, in essence, that, if the land *may be* subject to the tax, the buyer must be so informed. Thus, there is greater consistency between the seller's knowledge and the information to be given to the buyer.

of these revenues be distributed to the Maryland Agricultural Preservation Fund (Art. 81, § 278F(h) (1957, 1980 Repl.Vol., 1984 Cum.Supp.), and Md. Tax–Prop.Code Ann. § 13–306 (1986, 1988 Cum.Supp.)), the means for preserving Maryland's farm lands are contained in Md.Agric.Code Ann. §§ 2–501 *et seq.* (1974, 1985 Repl.Vol., 1988 Cum.Supp.).

The legislative purpose of assessing and collecting these revenues would be fulfilled regardless of whether the buyer received actual written notice. Moreover, even if a secondary purpose of this subtitle were to inhibit the transfer of agricultural land to nonagricultural use (*see DMH Joint Venture v. Hahner,* No. 1708, Sept. Term, 1988, slip op. at 11), that purpose would be fulfilled by the buyer's actual knowledge that the transfer may be subject to a substantial tax.[2] Moreover, the fact that the penalty for failure to notify falls upon the seller (§ 13–308(b)) is readily susceptible to the interpretation that the Legislature intended to protect an unsophisticated purchaser from an unexpected tax assessment. Therefore, I believe a fair reading of the statute and its legislative history indicate that the Legislature intended the notice provision in § 13–308 to be for the purpose of *informing* the buyer of a possible additional tax assessment.

Next, in determining whether DMH relied upon the absence of the notification, we must examine its conduct throughout the transaction. In January 1986, DMH made a written offer to appellees which provided that "any transfer or other taxes pertaining to any rezoning or farmland or timberland assessment for the Property shall be paid for solely by Seller." Appellees rejected this offer. Subsequently, the parties executed a contract which provided that the "transfer taxes" would be split equally between the seller and the buyer. DMH realized that the land might be

---

**2.** The majority's interpretation may even encourage sophisticated developers to avoid the tax by drafting offers for the purchase of property which simply leave out any mention of the agricultural land transfer tax.

subject to the agricultural land transfer tax and made the tax part of the bargained for exchange in the contract. Thus, DMH did not act in reliance on the absence of the notification. Therefore, I would conclude that, in a case such as this, a buyer's actual knowledge of a potential agricultural land transfer tax may supplant the written notification provision in Md.Tax–Prop.Code Ann. § 13–308(a) (1986).

Finally, while DMH admits that it knew the law, that it was a sophisticated developer, and that the property was agricultural and hence might be subject to the agricultural land transfer tax, it attempts to make a great deal out of the fact that it did not know this land was in fact subject to the tax. Section 13–308(a), however, does not require that the buyer be informed that the property *is* subject to the tax. That section provides in pertinent part:

> "When a contract is executed for the transfer of any interest in agricultural land, the seller shall notify the buyer, in writing, that the transfer *may be* subject to the agricultural land transfer tax." (Emphasis added.)

In this context, "may be" is used to denote the possibility, not the certainty, that the property will be subject to the tax. Thus, DMH's arguments on this point have no merit.